# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00381-CV

**Santos Cervantes, Esther Cervantes, David Cervantes and Martha Cervantes, Appellants**

**v.**

**Rosie Cervantes, Appellee**

## FROM THE DISTRICT COURT OF BASTROP COUNTY, 21ST JUDICIAL DISTRICT NO. 26,484, HONORABLE H. R. TOWSLEE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellee, Rosie Cervantes, obtained a default judgment ordering appellants Santos, Esther, David, and Martha Cervantes to specifically perform their promise to convey property and to pay attorney's fees and costs in her suit for fraud, fraud in the inducement, breach of contract, real estate fraud under section 27.01 of the business and commerce code, and knowing and intentional misrepresentation. Appellants filed a motion for new trial, which the trial court denied. In this appeal, appellants argue that the trial court erred in denying their motion for new trial because: (1) the return of service was defective, (2) appellants established all elements to obtain a new trial

under *Craddock v. Sunshine Bus Lines, Inc.*, 133 S.W.2d 124 (Tex. 1939), and (3) Rosie[1] is not entitled to recover from appellants as a matter of law. We will reverse the trial court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of a dispute between members of the Cervantes family over three acres of land located in Bastrop County. The parties dispute the circumstances under which Rosie and her late husband, Sam, moved onto the property. Appellants allege that Santos and Esther invited their son, Sam, and Rosie to move to the property to help them through financial difficulties caused by Sam's terminal illness and the "criminal troubles" of some of Rosie and Sam's grandchildren. Appellants assert that they made no promise to give the property to Rosie and Sam. Rosie alleges that Santos promised to give her and Sam the deed to the property if they would move there from Houston, which they did after purchasing a mobile home, setting up water and electric service, and installing a septic system and water well. Rosie and Sam hired an attorney in October 2006 after appellants continued to refuse their requests for a deed to the property. On November 2, 2006, Rosie and Sam filed a request to take Sam's deposition before suit; however, Sam died on November 15, one day before the court signed the agreed order authorizing his deposition.

On April 5, 2007, Santos filed a complaint for eviction against Rosie in a precinct justice court of Bastrop County. Rosie filed a plea to the jurisdiction asserting that Santos's

---

[1] Because the parties share a common surname, we will refer to them by their first names to avoid confusion.

claim was necessarily dependent upon the determination of title to real property, an issue within the district court's exclusive jurisdiction. The justice court dismissed the case for lack of jurisdiction. On April 24, Rosie sued appellants in the Bastrop County District Court for fraud, fraud in the inducement, breach of contract, real estate fraud under section 27.01 of the business and commerce code, and knowing and intentional misrepresentation. On June 4, after a hearing, Rosie obtained a default judgment ordering appellants to specifically perform their promise to convey the property and to pay Rosie's attorney's fees and costs. The default judgment was filed with the clerk on the morning of June 11. Later that day, appellants filed a motion for new trial asserting that: (1) the return of service was defective; (2) the citation was defective; and (3) counsel's failure to file a timely answer was due to mistake or accident, appellants have a meritorious defense, and granting a new trial would not result in delay or prejudice to Rosie.

In the motion for new trial and at the hearing on the motion for new trial, appellants' counsel explained that his failure to file a timely answer was due to "an honest administrative error" within his office. According to appellants' counsel, when he was retained by appellants in "late April 2007" to initiate a cause of action to evict Rosie, he was unaware that Rosie had filed a cause of action against appellants. Some time in April or May, one of the appellants delivered a copy of Rosie's original petition to appellants' counsel's office.[2] Appellants' counsel contends that this appellant obtained the petition from the courthouse. At the hearing on appellants' motion for new trial, appellants' counsel testified:

---

[2] Appellants' counsel testified that he did not remember which of the individual appellants delivered the petition: "one of the defendants—I don't recall which one—came into the office with a petition in his hand."

3

He said that he had gone to the court because he wanted to—he couldn't get in contact with my office or he couldn't get in contact with me personally, and he wanted to see what had been done on the case. So he came down to the court and picked up a petition and brought the petition back to my office.

Appellants' counsel then explained:

At that time it was, I think, maybe two or three months after I had hired a paralegal who was not really familiar with how these things work. And she did not understand that when a petition is filed, even though we're hired to initiate the proceedings, we were hired for the purpose of being the plaintiff. So that's where the confusion and the mistake came in; we were hired for the purpose of evicting the plaintiff . . . .

So that caused some confusion in the mind of the paralegal because when she received the petition, she did not really understand even though we were retained for the purpose of evicting the petitioner, we still have to respond to that petition.

So that information was not put into our automated docketing system, which is Amicus Attorney 7, which in turn would prompt me to meet the deadline for responding to it.

In appellants' motion for new trial, appellants' counsel stated that he discovered Rosie's original petition "during a monthly inspection of the physical files" and "contacted the court." On July 3, the trial court denied appellants' motion for new trial. Appellants perfected this appeal.

On appeal, appellants argue that the trial court erred in denying their motion for new trial because: (1) the return of service was defective; (2) appellants met the *Craddock* factors for setting aside a default judgment; and (3) Rosie is not entitled to recover from appellants as a matter of law.

4

## STANDARD OF REVIEW

Trial courts have broad discretion in ruling on motions for new trial. *Limestone Constr., Inc. v. Summit Commercial Indus. Props., Inc.*, 143 S.W.3d 538, 542 (Tex. App.—Austin 2004, no pet.). We review a trial court's denial of a motion for new trial for abuse of discretion. *Id.* at 542. The test for abuse of discretion is whether the trial court acted arbitrarily or without reference to guiding legal principles. *Cire v. Cummings*, 134 S.W.3d 835, 839 (Tex. 2004). Although we are generally deferential to the trial court's determination of facts, *see, e.g.*, *Flores v. Fourth Court of Appeals*, 777 S.W.2d 38, 41-42 (Tex. 1989), we do not defer to a trial court's application of the law, *McDaniel v. Yarbrough*, 898 S.W.2d 251, 253 (Tex. 1995). A failure by a trial court to analyze or apply the law correctly is an abuse of discretion. *Id.*

A trial court abuses its discretion if it refuses to set aside a default judgment and grant a new trial where: (1) the failure of the defendant to answer before judgment was not intentional or the result of conscious indifference, but due to a mistake or an accident; (2) the motion for a new trial sets up a meritorious defense; and (3) granting a new trial will occasion no undue delay or otherwise injure the party taking the default judgment. *Craddock*, 133 S.W.2d at 126.

## DISCUSSION

### *Return of Service*

Appellants first contend that the default judgment cannot stand because the return of service was defective for failing to state the name of the person served and the place of service. The

5

return of service consists of a form with blanks filled in by the serving officer.[3] We set forth the return of service in its entirety (italicized portions are handwritten in the return):

### Officer's Return

Came to hand the *26* day of *Apr.*, 20*07*, at *4:40* o'clock *P*.M., and executed the *30* day of *Apr.*, 20*07*, at *9:15* o'clock *A*.M., by delivering to the within named _____ in *Bastrop* County, Texas, in person, a true copy of this INSTRUMENT and tendering said witness the sum of $ _____.


FEES: $ _____                                    *R. Hernandez—Sheriff*
                                                   Officer or Authorized Person
                                                   *Bastrop* County, Texas
                                                   By: *Jack Sparkman*


The attached citations include appellants' names. Appellants do not contend that the citations are defective.

Service of citation must be in strict compliance with the rules of civil procedure to establish jurisdiction over a defendant and support a default judgment. *Wilson v. Dunn*, 800 S.W.2d 833, 836 (Tex. 1990). If strict compliance is not shown, the service of process is invalid and of no effect. *Uvalde Country Club v. Martin Linen Supply Co.*, 690 S.W.2d 884, 885 (Tex. 1985). We make no presumptions of valid issuance, service, or return of citation when examining a default judgment. *Id*. However, "strict compliance with the rules does not require 'obeisance to the minutest detail.'" *Williams v. Williams*, 150 S.W.3d 436, 443-44 (Tex. App.—Austin 2004, pet. denied) (quoting *Ortiz v. Avante Villa at Corpus Christi, Inc.*, 926 S.W.2d 608, 613

---

[3] The returns of service for Santos, Esther, David, and Martha are identical with the exception of the times.

(Tex. App.—Corpus Christi 1996, writ denied)). "As long as the record as a whole, including the petition, citation, and return, shows that the citation was served on the defendant in the suit, service of process will not be invalidated." *Id*. at 444.

Texas Rule of Civil Procedure 107, which sets out the requirements for the return of service, reads in pertinent part: "The return of the officer or authorized person executing the citation shall be endorsed on or attached to the same; it shall state when the citation was served and the manner of service and be signed by the officer officially or by the authorized person." Tex. R. Civ. P. 107. Rule 107 does not expressly require the return of service to include the name of the person served. However, appellants contend that Rule 107's requirement that the return state the "manner of service" includes showing the method by which the citation was served (e.g., hand delivery or mail) *and* that the citation was served on a person capable of accepting service. For this contention, appellants cite *Faggett v. Hargrove*, 921 S.W.2d 274, 277 (Tex. App.—Houston [1st Dist.] 1999, no pet.), *overruled, in part, on other grounds by Barker CATV Constr., Inc. v. Ampro, Inc.*, 989 S.W.2d 789, 793 n.2 (Tex. App.—Houston [1st Dist.] 1999, no pet.) (en banc). In *Faggett*, the court held that the return for a citation for which the court had ordered substitute service did not state the "manner of service" when it did not show that the person on whom citation was served was capable of accepting service under Texas Rule of Civil Procedure 106. 921 S.W.2d at 278 (holding record failed to show "manner of service" when "nothing in the record indicated that 'Fong, Tran' was a person over sixteen years of age" or that proper substitute service accomplished). Here, substitute service was not ordered. Appellants, the named defendants, are the people to whom the Bastrop County sheriff's deputy delivered the citation and petition. Unlike the factual situation

7

in *Faggett*, there was no need to affirmatively show that all aspects of substituted service were met. Thus, the citation need not include this recitation. *See Tavarez v. Smith*, No. 03-02-00118-CV, 2002 Tex. App. LEXIS 8093, at *10-12 (Tex. App.—Austin Nov. 15, 2002, no pet.) (not designated for publication).

Further, *Faggett* is a restricted appeal, while this is an appeal from the denial of a motion for new trial. The Texas Supreme Court has explained that because of "the differences in these procedures . . . cases concerning one do not necessarily apply to the other." *Fidelity & Guar. Ins. Co. v. Drewery Constr. Co.*, 186 S.W.3d 571, 573 (Tex. 2006 ) (per curiam). A restricted appeal is filed directly in the appellate court, and as in any other appeal, the appellate court does not take testimony or receive evidence, and its review is limited to errors apparent on the face of the record. *Id*. In restricted appeals, "there are no presumptions in favor of valid issuance, service, and return of citation" because the appellate court can neither confirm nor rebut presumptions with evidence. *Id*. (quoting *Primate Constr., Inc. v. Silver*, 884 S.W.2d 151, 152 (Tex. 1994) (per curiam)). The Court explained:

> Thus, for example, if the citation says an *amended* petition was attached (which named the defaulted party) and the return says the *original* petition was served (which did not), an appellate court cannot tell from the record which is true. *Primate Constr.*, 884 S.W.2d at 152. Similarly, if the petition says the registered agent for service is "Henry Bunting, Jr." but the citation and return reflect service on "Henry Bunting," an appellate court cannot tell whether those persons are different or the same. *See Uvalde*, 690 S.W.2d at 885.

*Id*. at 573. In contrast, "when a default judgment is attacked by a motion for new trial . . . the record is not so limited. In those proceedings, the parties may introduce affidavits, depositions, testimony, and exhibits to explain what happened." *Id*. at 573-74.

Appellants provide no additional authority for their contention that the return of service is required to include the defendant's name, or that if it is, the phrase "within named" when the defendant is named in the citation does not suffice. Because the citation, return, and petition together show that service was made on appellants, *see Williams*, 150 S.W.3d at 444, and appellants have provided no evidence showing otherwise, we will not invalidate service of process on this ground.

Appellants also contend that the return's statement that citation was delivered "in Bastrop County, Texas" failed to meet the requirement that the return state the place where service was made. To support this contention, appellants cite Texas Rules of Civil Procedure 16 and 107, as well as *Jacksboro National Bank v. Signal Oil & Gas Company*, 482 S.W.2d 339, 341-42 (Tex. App.—Tyler 1972, no writ). Rule 16 provides that an officer must include "on all process and precepts coming to his hand . . . the time and place the process was served." Tex. R. Civ. P. 16. Appellants provide no authority for their contention that "Bastrop County is not a sufficient designation of place under Rule 16." Rule 107 includes no requirement that a return of service include the place where service was made. And in *Jacksboro*, the return of service at issue included *no* designation of place. 482 S.W.2d at 342 ("It would seem that to have affirmatively shown a valid service, the sheriff's return should recite at least that the writ was served within the State of Texas.

9

The return in question states neither the city, town, state, nor country in which it was served."). We will not invalidate service of process on this ground.

In addition to their argument that the return of service was defective, it appears appellants also contend that they were not served.[4] If a defendant did not receive suit papers, generally a default judgment must be set aside. *Fidelity*, 186 S.W.3d at 574 (citing *Peralta v. Heights Med. Ctr., Inc.*, 485 U.S. 80, 84 (1988)). However, an exception to this rule exists when the return of service includes the proper recitations and nonreceipt is uncorroborated. *Id*.; *Primate Constr.*, 884 S.W.2d at 152. The return of service is not a trivial, formulaic document and is considered prima facie evidence of the facts it recites. *Id*. "The recitations in the return of service carry so much weight that they cannot be rebutted by the uncorroborated proof of the moving party." *Id*. Thus, we turn to appellants' proof. Appellants presented an affidavit from each defendant stating, "I was not served a copy of the petition with a citation in this case." In addition, at the hearing on the motion for new trial, appellants' counsel argued as follows:

COUNSEL: I think the most important comment that cannot be reiterated enough is that they actually did not receive service; they actually were not served. They were not handed anything by a sheriff. That—and that's—and their verification in their affidavits—they were not served. One of them came down to this court and picked up that document—I mean, picked up the original petition. And then they came to my office with that original petition and said, hey, did you do this? Where did this come from? Or that's what's been represented to me.

---

[4] On appeal appellants' arguments with respect to service of process are focused on the return of service. However, because appellants' brief refers to appellants' affidavits stating that they were not served, we address this issue.

|  |  |
|---|---|
|  | And that's how—that's what was explained to the paralegal. They didn't—they were not handed anything; they weren't served. |
| THE COURT: | It would be, I believe, highly unusual for a deputy sheriff to just invent or fabricate, if you will, a return of service. |
| COUNSEL: | They may have given it to someone—I mean, there is no—the trailer for the petitioner is on the same property as the trailer for the respondent. There are no—to my understanding, there are no numbers on the trailers. And the petitioner's trailer is actually closest to the street, and the respondent's trailer is actually furthest away from the street. |
| THE COURT: | So your allegation is he may have served someone but it wasn't your client? |
| COUNSEL: | Exactly. On that same piece of property and the same address. So I'm not saying he didn't serve anyone; all I'm saying is he didn't serve my clients. And it's very—I mean, that would be a forgivable mistake if you have two trailers on the same piece of property and at the gate you see the number for that piece of property and the first house you encounter is right there, that would be very forgivable for the sheriff to stop right here and assume that the first house—that this is the house that corresponds to that address. And that's a very reasonable mistake for him to make. But the ultimate result of it was—whatever mistake was made, my clients weren't served. |

Because appellants' proof is uncorroborated, it is insufficient to rebut the recitation in the return that the sheriff's deputy delivered it to the "within named." Thus, the trial court did not abuse its discretion in denying appellants' motion for new trial on this basis. We overrule appellants' first issue.

11

**Craddock *Factors***

Because we hold that the trial court did not abuse its discretion in denying appellants' motion for new trial on the basis of defective service of citation, we turn to *Craddock*.  A trial court abuses its discretion if it refuses to set aside a default judgment and grant a new trial where:  (1) the failure of the defendant to answer before judgment was not intentional or the result of conscious indifference, but due to a mistake or an accident; (2) the motion for new trial sets up a meritorious defense; and (3) granting a new trial will occasion no undue delay or otherwise injure the party taking the default judgment.  *Craddock*, 133 S.W.2d at 126.  If the plaintiff does not controvert the defendant's affidavits in support of a new trial motion, the trial court must accept as true the affidavits' factual assertions regarding the *Craddock* elements.  *Director, State Employees Workers' Comp. Div. v. Evans*, 889 S.W.2d 266, 268 (Tex. 1994).

      **(A)**      **Mistake or Accident**

Appellants assert that their evidence established that their failure to file an answer was due to mistake, not conscious indifference.  To support their motion for new trial, appellants presented their own affidavits, as well as the affidavits of appellants' counsel and appellants' counsel's paralegal, which do not contain any factual assertions regarding appellants' failure to answer, but instead state:  "I have read the First Amended Motion for a New Trial and statements contained therein pertaining thereto are within my personal knowledge and are true and correct."  Santos's affidavit further asserts that he did not promise to give Rosie or Sam any property.

12

In appellants' first amended motion for new trial, they assert that some time in May,[5] one of them—they do not specify which, and appellants' counsel testified that he does not remember—obtained a copy of Rosie's original petition from the courthouse and brought it to appellants' counsel's office. Appellants' counsel testified that this appellant obtained the petition from the courthouse because "he wanted to—he couldn't get in contact with my office or he couldn't get in contact with me personally, and he wanted to see what had been done on the case." Appellants contend that although the petition had been delivered to appellants' counsel's office, appellants' counsel was unaware of it because his paralegal failed to enter it into the internal docketing system. Appellants assert that during a monthly inspection of his files, appellants' counsel discovered the petition and "contacted the court." Appellants have presented no evidence of the manner in which counsel contacted the court or when this contact occurred. Presumably, it was before June 11, when appellants filed their motion for new trial. At the hearing on the motion for new trial, Rosie's counsel argued that a defendant is bound by his attorney's actions and that an internal docketing mistake is not sufficient to set aside a default judgment. He further argued:

> And in the affidavits of defendants' counsel—and they're a little unclear, as I pointed out in my response, but first of all he said that he was given paperwork in April. That's the first motion for new trial. Now the second motion for new trial he acknowledges he got the paperwork in May. Now, I'm not sure which one is the truth, but in any event he had sufficient information in his hands to determine that

---

[5] Appellants initially asserted in their motion for new trial that this delivery occurred "on around April 26, 2007." Appellants' first amended motion for new trial states that it occurred "on around May 26, 2007." At the hearing on the motion for new trial, appellants' counsel testified that it occurred "sometime around May, late May." Appellants' answer was due May 21, thus, it is unclear on this record whether the original petition was in appellants' counsel's possession before the answer was due.

13

there was something that needed to be done. He had all the data he needed to file an answer, and he had two weeks to do it and he did not respond in that fashion.

I think that that in and of itself can be construed as conscious indifference. And certainly he intentionally did not file an answer; he intentionally did not look more closely at the paperwork from which he could have concluded that an answer was due. There was more than sufficient information for Counsel to conclude that there was something that he needed to do to file an answer.

Failing to file an answer intentionally or due to conscious indifference means "the defendant *knew* it was sued but did not care." *Levine v. Shackelford, Melton & McKinley, L.L.P.*, 248 S.W.3d 166, 168 (Tex. 2008) (per curiam) (quoting *Fidelity*, 186 S.W.3d at 576). When determining whether the defendant's failure to file an answer was not due to intentional disregard or conscious indifference, a court looks to the knowledge and acts of the defendant. *Evans*, 889 S.W.2d at 269. Generally, when the defendant relies on an attorney to file an answer, the defendant must establish that the failure to answer was not intentional or the result of the conscious indifference of either himself or his attorney. *See, e.g.*, *Levine*, 248 S.W.3d at 169; *Estate of Pollack v. McMurrey*, 858 S.W.2d 388, 391 (Tex. 1993). The defendant's burden as to the first prong of the *Craddock* test is satisfied when the defendant's factual assertions, if true, negate intentional or consciously indifferent conduct and are not controverted by the plaintiff. *Evans*, 889 S.W.2d at 268. In determining if the defendant's factual assertions have been controverted, the court looks to all the evidence in the record. *Id*. at 269.

14

The trial court's ruling indicates that it found that although appellants may have negated conscious indifference on their part by providing evidence that they delivered a copy of the petition to their attorney, they did not negate conscious indifference on the part of their attorney:

> I believe when a petition, an original petition, is delivered to a lawyer's office, that should be enough diligence, if you will, on the part of the client to get an answer filed. And I'm not satisfied with your claim that your paralegal made a mistake and didn't put it on the calendar or docket or give it to you.

We agree that by delivering a copy of the petition to their attorney, appellants took sufficient action to negate conscious indifference on their part. However, we hold that appellants' counsel's actions, while perhaps negligent, do not reach the level of conscious indifference.

Rosie argues that conscious indifference means "a failure to take some action which would seem indicated to a person of reasonable sensibilities under the same circumstances." However, the Texas Supreme Court recently clarified that the first prong of the *Craddock* test is not a negligence standard. *Levine*, 248 S.W.3d at 168. In *Levine*, the attorney knew of the deadline to file an answer and agreed to file one by that date, but failed to do so. *Id*. at 169. He again failed to meet an extended deadline. *Id*. He eventually emailed a draft answer to the parties, but never attempted to confirm that it was filed "despite repeated discussions, emails, and contact with the opposing party warning him that if he did not file an answer, [the opposing party] would take a default judgment." *Id*. The Court held that "[t]his pattern of ignoring deadlines and warnings from the opposing party amounts to conscious indifference." *Id*.

Our survey reveals that in cases holding that the acts of attorneys reached the level of conscious indifference, the nonmovant presented evidence that the movant's attorney was aware of the impending default judgment or that the movant's attorney had repeatedly ignored deadlines or communications. *See, e.g.*, *Padilla v. Hollerman Dev., L.P.*, No. 04-08-00739-CV, 2009 Tex. App. LEXIS 2917, at \*10 (Tex. App.—San Antonio Apr. 29, 2009, no pet.) (mem. op.) (holding it was not abuse of discretion for trial court to deny motion for new trial when attorney looked at petition and instructed client no answer was needed because service was improper, but testified he did no research regarding whether answer was due and if he had, he would have filed answer); *Kern v. Spencer*, No. 2-06-199-CV, 2008 Tex. App. LEXIS 5582, at \*15-17 (Tex. App.—Fort Worth July 24, 2008, no pet.) (mem. op.) (holding it was not abuse of discretion for trial court to deny motion for new trial when evidence included: six certified mailings notifying attorney of submission date; uncontroverted statements regarding attorney's recurring pattern of failure to prosecute case, show up for depositions, and respond to discovery; and testimony that attorney often used excuse of not having been notified); *21st Century Home Mortgage v. City of El Paso*, 281 S.W.3d 83, 86-87 (Tex. App.—El Paso 2008, no pet.) (holding it was not abuse of discretion for trial court to deny motion for new trial when attorney testified that he thought client was not party to lawsuit and was confused as to why client was served, but nonmovant presented citation stating that client had been sued in second amended petition and that default would be taken if client did not answer).[6]

---

[6] The cases Rosie cites in which the movant's error or inaction amounted to conscious indifference predate the Texas Supreme Court's clarification of conscious indifference in *Levine* and appear to apply a negligence standard. *See, e.g.*, *Advanced Aesthetics, Inc. v. Creative Beauty*

16

Here, appellants have presented evidence that they delivered the original petition to their attorney's office, but that because of his paralegal's administrative error, he was not aware of it and thus did not know that an answer was due. Appellants provided the affidavits of their attorney and his paralegal attesting to the explanation of the administrative error provided in the motion for new trial. Although it should have been no surprise to appellants that Rosie filed a lawsuit in district court since she had filed a request to take Sam's deposition prior to suit five months earlier, by delivering a copy of the petition to their attorney, appellants took sufficient action to negate conscious indifference. Appellants retained their current attorney in April 2007, five months after the request to take Sam's deposition prior to suit, and Rosie has presented no evidence that appellants' counsel was aware of this request. Rosie has presented no evidence to controvert appellants' contention that their attorney was unaware that a petition was filed and an answer was due. Nor has she presented evidence that she warned appellants or their attorney that she would take a default or that appellants or their attorney had engaged in a pattern of disregarding deadlines. She likewise has not presented evidence controverting appellants' proof of the paralegal's error in failing to enter the petition into the internal docketing system. *See Fidelity*, 186 S.W.3d at 576 ("The affidavits here show neither intent nor indifference. Instead, they detail Fidelity's efforts to establish

---

*Innovations, Inc.*, No. 2-04-078-CV, 2005 Tex. App. LEXIS 1142, at *15 (Tex. App.—Fort Worth Feb. 10, 2005, pet. denied) (mem. op.) (holding that "a person of reasonable sensibilities under the same circumstances would have taken action to file an answer . . . prior to the date the trial court signed the default judgment"); *Prince v. Prince*, 912 S.W.2d 367, 370 (Tex. App.—Houston [14th Dist.] 1995, no writ) (holding that court "interpret[s] conscious indifference to mean a failure to take some action which would seem indicated to a person of reasonable sensibilities under the same circumstances").

17

a system that would avoid precisely what happened. As Drewery did not controvert this proof, the trial court was not at liberty to disregard it.").

Because appellants have presented evidence that their failure to answer was due to their attorney's mistake and Rosie has presented no controverting evidence, we hold that appellants met the first prong of the *Craddock* test.

### (B) Meritorious Defense

The second prong of the *Craddock* test requires appellants to "set up" a meritorious defense in their motion for new trial. *Dolgencorp of Tex., Inc. v. Lerma*, 288 S.W.3d 922, 927 (Tex. 2009) (per curiam). "Setting up a meritorious defense does not require proof 'in the accepted sense.'" *Id*. at 927-28 (quoting *Ivy v. Carrell*, 407 S.W.2d 212, 214 (Tex. 1966)). Rather, a motion for new trial sets up a meritorious defense if it alleges facts which in law would constitute a defense to the plaintiff's cause of action and is supported by affidavits or other evidence providing prima facie proof that the defendant has such a defense. *Id*. at 928. Once such requirements are met, controverting evidence offered by the nonmovant should not be considered. *Id*.

Appellants' first amended motion for new trial asserted "[d]efendants deny that Plaintiff was given permission to move onto property by Mr. David Cervantes, the rightful owner of the property and that Plaintiff was promised ownership of the property in exchange for Plaintiff's moving onto the property." Appellants submitted affidavits from each appellant stating "I have read the First Amended Motion for a New Trial and statements contained therein pertaining thereto are within my personal knowledge and are true and correct." Santos's affidavit further stated:

18

My son Santos Cervantes, Jr. [Sam] asked to move onto the property because of his financial problems he was having due to his terminal illness and the criminal problems his sons and grandsons were having in Houston, Texas. I made no promise to give my son Santos Cervantes any property. He was allowed them [sic] to move onto the property only because of the hardship he then suffered.

At the hearing on the motion for new trial, in addition to asserting that Santos and Esther never promised to give the property to Rosie or Sam, appellants' counsel also asserted:

Primarily the meritorious defense is that the defendants, Mr. Santos Cervantes and Ms. Esther Cervantes, number one, they don't own the property that the plaintiff is saying they gave to the plaintiff. You cannot convey more than you own; that's a fundamental rule of property. You can't convey that which you do not own. The property belongs to David . . . the petition itself says, Santos and Esther made the promises. They don't implicate David in making any promises.

The facts alleged in appellants' motion, if true, would constitute a defense to Rosie's cause of action. Further, the affidavits appellants submitted and appellants' counsel's testimony at the hearing on the motion for new trial provided prima facie support for the defense. Appellants have satisfied the second prong of the *Craddock* test.

### (C)    No Undue Delay

The third prong of the *Craddock* test is that the motion for new trial be filed at a time when the granting thereof will occasion no undue delay or otherwise injure the plaintiff. *Evans*, 889 S.W.2d at 270. "Once a defendant has alleged that granting a new trial will not injure the plaintiff, the burden of going forward with proof of injury shifts to the plaintiff." *Id*. The purpose of the third prong of the *Craddock* test is to protect a plaintiff against the sort of undue delay

or injury that would result in a disadvantage when presenting the merits of the case at a new trial, "such as a loss of witnesses or other valuable evidence." *Id*.

In their motion for new trial, appellants asserted that granting a new trial would not result in delay or prejudice and offered to go to trial immediately and to reimburse Rosie for the expenses incurred in obtaining the default judgment.[7] Rosie's response to the motion for new trial does not assert that granting a new trial would cause her any injury, nor did she present any evidence of injury at the hearing on the motion for new trial. Thus, Rosie has failed to show an injury that negates appellants' allegation of no undue delay or injury. Appellants have satisfied the third prong of the *Craddock* test.

Because appellants have satisfied all three prongs of the *Craddock* test, we need not reach appellants' remaining issue.

**CONCLUSION**

Because appellants satisfied all three prongs of the *Craddock* test, we hold that the trial court abused its discretion in refusing to set aside the default judgment against appellants. Accordingly, we reverse the trial court's judgment and remand the case for further proceedings consistent with this opinion.

---

[7] A party's willingness to go to trial immediately and pay for the expenses of the default judgment are important factors for the court to look at in determining whether it should grant a new trial, but are not dispositive. *Director, State Employees Workers' Comp. Div. v. Evans*, 889 S.W.2d 266, 270 n.3 (Tex. 1994).

_____

David Puryear, Justice

Before Justices Patterson, Puryear and Henson

Reversed and Remanded

Filed:   November 5, 2009

21