# NO. 12-09-00458-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *BOBBY DEAN COSTON,* *APPELLANT* | § | *APPEAL FROM THE THIRD* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *NANCY JUNE COSTON,* *APELLEE* | § | *HENDERSON COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Bobby Dean Coston appeals the trial court's default judgment of divorce rendered in favor of Nancy June Coston. In two issues, Bobby alleges that the trial court abused its discretion by denying his motion for new trial. We affirm.

## BACKGROUND

Bobby and Nancy were married on April 23, 2005. Nancy filed her "Original Petition for Divorce" on August 6, 2009. Nancy served Bobby with the citation and her petition on August 19, 2009. The citation "commanded" Bobby to "appear by filing an answer . . . at or before 10 o'clock a.m. of the Monday next after the expiration of twenty days after the date of service hereof . . . ." The citation further read:

> **NOTICE TO RESPONDENT :** You have been sued. You may employ an attorney. If you or your attorney does not file a written answer with the Clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you.

Bobby failed to file an answer by this time.

On October 12, 2009, the trial court held an evidentiary "default judgment hearing." The trial court subsequently entered a default judgment of divorce, styled "Final Decree of Divorce." Three days later, Bobby filed an answer. Bobby also filed a motion for new trial, alleging that the trial court should set aside the default judgment. After an evidentiary hearing, the trial court denied the motion for new trial. This appeal followed.

1

In his first and second issues, Bobby alleges that the trial court abused its discretion by denying his motion for new trial.

## Standard of Review

We review a trial court's ruling on a motion for new trial for an abuse of discretion. *Strackbein v. Prewitt*, 671 S.W.2d 37, 38 (Tex. 1984). A trial court abuses its discretion when its decision is arbitrary, unreasonable, or without reference to any guiding rules or legal principles. *K-Mart Corp. v. Honeycutt*, 24 S.W.3d 357, 360 (Tex. 2000). "The mere fact that a trial judge may decide a matter within his discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred." *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex. 1985).

The historical trend in default judgment cases is to liberally grant new trials. *Miller v. Miller*, 903 S.W.2d 45, 47 (Tex. App.—Tyler 1995, no writ). The law prefers that cases be disposed on their merits wherever possible, rather than by default. *Gen. Electric Capital Auto Fin. Leasing Servs., Inc. v. Stanfield*, 71 S.W.3d 351, 356 (Tex. App.—Tyler 2001, pet. denied). In *Craddock v. Sunshine Bus Lines*, the Texas Supreme Court explained that

> [a] default judgment should be set aside and a new trial ordered in any case in which the failure of the defendant to answer before judgment was not intentional, or the result of conscious indifference on his part, but was due to a mistake or an accident; provided the motion for a new trial sets up a meritorious defense and is filed at a time when the granting thereof will occasion no delay or otherwise work an injury to the plaintiff.

*Craddock v. Sunshine Bus Lines, Inc.*, 134 Tex. 388, 393, 133 S.W.2d 124, 126 (1939). "When all three elements of the *Craddock* test are met, the trial court abuses its discretion by not granting a new trial." *Bank One, Tex., N.A. v. Moody*, 830 S.W.2d 81, 85 (Tex. 1992).

The *Craddock* test is one of intentional or conscious indifference: that the defendant knew he was sued but did not care. *Fid. & Guar. Ins. v. Drewery Constr. Co.*, 186 S.W.3d 571, 575-76 (Tex. 2006). An excuse need not be a good one to suffice. *Id.* at 576. Our supreme court has often set aside default judgments when papers were misplaced, though no one knew precisely how. *Id.* at 575.

In determining whether the failure to appear was due to intentional disregard or conscious indifference, we must look to the knowledge and acts of the defendant. *Strackbein*, 671 S.W.2d at 39. Conscious indifference can be defined as "the failure to take some action which would have been indicated to a person of reasonable sensibilities under the same or similar circumstances." *Alford v. Cary*, No. 12-04-00314-CV, 2007 WL 60765, at *3 (Tex. App.—Tyler

Jan. 10, 2007, pet. denied) (mem. op.). Conscious indifference requires more than negligence; some excuse, but not necessarily a good excuse, is enough to show a lack of intentional conduct or conscious indifference. ***Massey v. Massey***, No. 12-05-00216-CV, 2006 WL 1791682, at *3 (Tex. App.—Tyler June 30, 2006, no pet.) (mem. op.).

When, as here, evidence is introduced at a hearing, the issues in the movant's affidavit become fact questions for the trial court to resolve. *See* ***Gilbert v. Brownell Electro***, 832 S.W.2d 143, 144-45 (Tex. App.—Tyler 1992, no writ). Therefore, the trial court was charged with the role of factfinder to determine if Bobby's conduct amounted to consciously indifferent or intentional behavior. *See* ***id.*** at 144. In this role, the trial court is "the sole judge of the credibility of a witness and the weight to be given to the testimony; it may choose to believe all, none, or part of [any] testimony." ***Id.*** at 144-45. Where there are no findings of fact and conclusions of law requested or filed, the trial court's decision must be upheld on any legal theory that finds support in the evidence. ***Strackbein***, 671 S.W.2d at 38.

## Discussion

The first prong of the ***Craddock*** test addresses the issue of why the defaulting party failed to file an answer. ***Craddock***, 134 Tex. at 393, 133 S.W.2d at 126. Bobby's motion for new trial included two affidavits, respectively from Bobby and his father, Hollis Coston. Bobby alleged in his affidavit that he had "been suffering from serious injuries sustained in a racing car accident that required hospitalization, two surgeries and extended rehabilitation." He stated that, "[w]hen [he] received service of citation in this case[,] [he] was physically and mentally unable to deal with the situation until October 14, 2009." He also stated that he had "mistakenly believed that [he] would receive further notice regarding a date to appear, but no notice of a hearing came to [him]." Finally, he asserted that his "failure to timely file an answer was not intentional or conscious indifference on [his] part in laying aside the citation at a time when [he] was experiencing extreme pain and suffering." Hollis provided support for Bobby's allegations in his affidavit. Hollis stated that Bobby "was seriously injured in a race car accident that led to extensive back surgery and resulting rehabilitation that continues to this date."

Nancy's response to Bobby's motion included her own affidavit. Nancy's affidavit read, in pertinent part, as follows:

> Bobby Dean Coston's failure to file an answer was due to his intentional or conscious indifference and not the result of accident or mistake. Mr. Coston was not under physical or mental distress to the point that would prevent him from filing an answer. I had several conversations with Mr. Coston about the divorce between the period of time that he was served and the final trial date. I tried on several occasions to discuss the divorce but he would not cooperate. During this time period Bobby Coston did not show any signs that he was mentally or physically unable to file an answer.

In light of the conflicting affidavits, Bobby sought an evidentiary hearing before the trial court. Bobby testified as the sole witness in support of a new trial. Nancy did not testify and brought no additional evidence. Nancy did request that the trial court take judicial notice of the three affidavits and the trial court granted, without objection, that request. Bobby's pertinent testimony was as follows:

DIRECT EXAMINATION

Q.　　Can you explain to the Court, Mr. Coston, what reason that you had for not filing a - - an answer or what your expectations were with Nancy during this period of time?

A.　　I was under the impression that there could well be a reconciliation.

Q.　　You wanted to reconcile with her, did you not?

A.　　Yes, sir.

. . . .

Q.　　In terms of your expectation that y'all might be able to reconcile, Ms. Coston was calling you and talking to you about your relationship after the divorce was filed; isn't that correct?

A.　　Yes, sir.

Q.　　[Did] you feel that you might have a better chance to reconcile if you didn't inflame this with . . . court proceedings such as we're having here?

A.　　Absolutely.

Q.　　So it was not an indifference on your part why you were ignoring filing an answer. It was because you were hoping for a reconciliation?

A.　　Yes, sir.

. . . .

Q.　　In the affidavit that Nancy Coston has filed, Mr. Coston, she makes a comment that you were uncooperative as far as talking to her about the divorce. Is that true?

A.　　No, sir.

Q.　　In fact, you were wanting her and talking to her about reconciliation, weren't you?

A.　　Yes, sir.

. . . .

Q.　　You didn't file an answer because you thought you were working toward a reconciliation with her and didn't want to inflame it; isn't that right?

A.　　That's correct.

Q.　　It was not conscious indifference on your part that you were just not paying any attention to it?

A.　　Right.

Q.      Mr. Coston, have you read the motion for new trial that your attorney filed on your behalf?

A.      Yes.

Q.      . . . . In Paragraph 2, it says you mislaid the citation after it was delivered to you. Is that a true statement where your attorney said that in the motion?  Is that true?

A.      Yes, sir.

Q.      You did mislay the citation?  Then in the next sentence it says you mistakenly believed that you would receive further notice regarding the date to appear.

A.      Yes, sir, I did.

Q.      Is that true today?  You mislaid it, and you thought you'd get another notice?

A.      Actually, I thought I'd get a court date, yes, sir.

Q.      And then I want to refer to your supporting affidavit.  And in Paragraph 4, you state, "When I received service of citation in the case, I was physically and mentally unable to deal with the situation until October 14."  Is that true?

A.      Well, I wasn't aware that the divorce was going to be in October, you know, October the 14th.  I didn't have any notification when the date was.  Matter of fact - -

Q.      Yes or no, sir.  In Paragraph 4, you said, "When I received service of citation in this case, I was physically and mentally unable to deal with the situation until October 14, 2009."  Is that a true statement that you swore to?

A.      Yes.

Q.      In the default, the trial date was two days before; is that correct?

A.      Yes, sir.  I believe that's right.

Q.      And you received notice of the citation . . . on August the 19th; is that correct?

A.      Thereabouts.

Q.      Well, so between August 19th and October 12th, the reason[s] that you stated in the motion for new trial and in your affidavit are that you mislaid it; and you thought you'd get notice.  That's one reason.  And your additional reason was you were physically and mentally unable to deal with it between the time of the citation and the time of the trial.  Those are your two reasons you stated; is that correct?

A.      And reconciliation.

Q.      Okay.  And you've never mentioned reconciliation until today; is that correct?

A.      I discussed it with my attorney.

Q.      This is an additional reason now that you failed to mention in your affidavit; is that correct?

A.      Yes.

. . . .

Q.    [You filed an answer three days after the default.]  Sir, right before - - what change - - you said you were physically and mentally unable to deal with the situation.  On October 15th, you were able to deal with it then because you filed an answer on that day.  But three days before, you weren't able to come to court.  You weren't able to file an answer.  What changed?  What happened there?  What, what - - how were you physically and mentally able to deal with it then but not a week before?  What was that week [that] miraculously happened?

A.    I guess listening to my dad and coming to the conclusion that there wasn't no reconciliation.  I was more or less [becoming] used to [the idea of] get[ting] this final decree.

Q.    So once again, sir, in your affidavit, you say the reason you weren't able to respond by the date is because you were physically and mentally unable to file an answer?

A.    No, sir.  I'm telling you that I was trying to reconcile with her during that time.

Q.    That's not my question.  You said you were physically and mentally unable to file an answer prior to the answer date of October 15th.  That's what you said in your affidavit.  The week before, before the trial date, were you physically and mentally able to file an answer?

A.    Yes.

Q.    You were?  So an affidavit is simply not true when you swore you were not able to deal with it on October 14th?

A.    No, sir.  You're twisting that around.

. . . .

Q.    When did the surgery occur, Mr. Coston?

A.    Actually, I'm not sure of the date.

Q.    You're not even sure of the date?

A.    No, sir.

Q.    When were you out of rehab?

A.    I ain't been to rehab.

. . . .

Q.    You [have] never been to physical rehab?

A.    No, sir.

. . . .

Q.    When this racing car accident occurred.  When did that happen?

A.    About two years ago.

Q.    And when was the last surgery?

A.    I believe around the first of August or July.

Q.    So a few months ago?

A.    Yes, sir.

Q.    2009?

6

A.      Correct.

. . . .

Q.      Are you under a guardianship?  Anybody in charge of your estate?  Are you physically, mentally unable to deal with the financial affairs?  Anything you'd like to tell me regarding that?

A.      No, sir.

. . . .

Q.      You're not under a guardianship, and no one is in charge of your estate?

A.      No, sir.

Q.      And you said you were disabled.  Are you on disability?

A.      No, sir.

### Physical and Mental Condition

The evidence before the trial court included three possible excuses for Bobby's failure to file an answer.  First, Bobby alleged that he was "physically and mentally unable to deal with the situation."  As part of this allegation, he alleged that his "failure to timely file an answer was not intentional or conscious indifference on [his] part in laying aside the citation at a time when [he] was experiencing extreme pain and suffering."  However, Nancy controverted Bobby's allegations with her own affidavit alleging that Bobby "was not under physical or mental duress to the point that would prevent him from filing an answer."  Bobby admitted as much during the above described hearing testimony.  Likewise, Bobby's testimony could be understood to indicate that any physical and mental inability had much more to do with his desire to reconcile than a debilitating condition.  His testimony could be understood to show that the change in his condition was the result of discussing the possibility of reconciliation with his father.  Therefore, it was permissible to determine that Bobby had not suffered from a condition rendering him incapable of filing a timely answer. *See Gilbert*, 832 S.W.2d at 144-45 (trial court may resolve contested issues of fact).  The same is true for Bobby's allegation that his failure to timely file an answer was not intentional or conscious indifference on his part in laying aside the citation at a time when he was experiencing extreme pain and suffering. *See id.*

### Mistaken Belief as to Further Notice

Second, Bobby alleged that he had mistakenly believed he would receive further notice regarding a date to appear.  In *Butler v. Dal Tex*, the Fort Worth court of appeals dealt with a similar factual scenario. *See Butler v. Dal Tex Mach. & Tool Co., Inc.*, 627 S.W.2d 258, 260 (Tex. App.—Fort Worth 1982, no writ).  There, the defendant alleged that he did not understand the citation and that he believed he would be notified of a court date. *Id.*  He claimed that he did

7

not understand that the citation required for him to file a written answer. *Id.* He further testified that he had a conversation with the constable who served him and that the constable advised him to get an attorney. *Id.* There was no evidence that the defendant ever sought help to understand the citation. *Id.* The court of appeals presumed that the citation complied with the applicable law governing its contents. *Id.* The court held that there was "ample evidence to support the implied finding by the trial court, whose duty it is to weigh the evidence, that the failure to file an answer was the result of . . . a conscious indifference on the part of [the defendant]." *Id.*

In *Johnson v. Edmonds*, the Fort Worth court again addressed a similar fact situation. *See Johnson v. Edmonds*, 712 S.W.2d 651, 652-53 (Tex. App.—Fort Worth 1986, no writ). In that case, the defendant contended that he failed to timely answer because he did not understand the nature of the citation served upon him, and that his misunderstanding was a mistake rather than conscious indifference. *Id.* at 652. The defendant testified that he believed the "papers" served upon him to be some indication that he was going to be sued rather than notice that he had been sued. *Id.* He acknowledged that he had previously received a demand letter from the plaintiff's attorney, that the citation was personally served upon him by someone whom he understood to be a constable, and that he read the "papers" served upon him. *Id.* However, he denied reading that part of the citation requiring him to timely answer the plaintiff's petition. *Id.* The court of appeals noted that "Appellant is capable of reading English, has four years of college education, and had engaged in the construction business for seven years." *Id.* The court reasoned as follows:

> We interpret conscious indifference to mean a failure to take some action which would seem indicated to a person of reasonable sensibilities under the same circumstances. In this case, the appellant neither sought help nor advice nor made inquiry about the import of the "papers" he had received. We find that such acts are evidence of conscious indifference sufficient to support the finding of the trial court.

*Id.* at 652-53.

Here, it is undisputed that Bobby was properly served with citation. As in *Butler* and *Johnson*, there was no evidence that Bobby sought help in understanding the citation served upon him. Further, it was reasonable for the trial court to presume that the citation in question complied with rule 99 of the Texas Rules of Civil Procedure. *See Butler*, 627 S.W.2d at 260; *see also* TEX. R. CIV. P. 99. Rule 99 reads, in pertinent part, as follows:

> **c. Notice.** The citation shall include the following notice to the defendant: "You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you."

TEX. R. CIV. P. 99(c).

In light of rule 99, as well as the undisputed fact that Bobby was served with citation, the trial court could properly find that Bobby's not filing an answer was the failure to take some action that would have been indicated to a person of reasonable sensibilities under the same circumstances. *See Johnson*, 712 S.W.2d at 653. Further, Bobby's hearing testimony was evidence that he had one reason for failing to answer, his goal of reconciliation with Nancy. In light of that goal, the trial court could have discounted the allegation that he failed to file an answer because he expected further notice. *See Gilbert*, 832 S.W.2d at 144-45 (trial court may resolve contested issues of fact).

*Hope of Reconciliation*

Finally, Bobby alleged at the hearing that he failed to file an answer because he had hoped to reconcile with Nancy and believed that filing an answer would make reconciliation more difficult. However, in light of the mandatory warning found in rule 99, the failure could be viewed as the result of conscious indifference.[1] *Cf. Vasquez v. Vasquez*, No. 04-97-00850-CV, 1998 WL 422296, at *2 (Tex. App.—San Antonio July 29, 1998, no pet.) (not designated for publication) (reaching a similar result).

## Conclusion

The evidence before the trial court was sufficient for the trial court to determine that Bobby had one goal, reconciliation. The trial court could have properly found that, to reach his goal, Bobby chose, as his strategy, to ignore the warning in the citation. He continued to do so even after the deadline to file an answer had passed. In light of rule 99, the trial court was free to conclude that Bobby acted with conscious indifference. *See Thomas v. Bobby D. Assocs.*, No. 12-01-00361-CV, 2002 WL 1429821, at *2 (Tex. App.—Tyler June 28, 2002, pet. denied) (not designated for publication) (reaching such a conclusion under similar facts where trial court acted as factfinder). Therefore, we hold that the trial court did not abuse its discretion by denying Bobby's motion for new trial. *See Craddock*, 134 Tex. at 393, 133 S.W.2d at 126. We overrule Bobby's first and second issues.[2]

### DISPOSITION

We *affirm* the judgment of the trial court. In her brief, Nancy has moved for appellate sanctions. That motion is *overruled*.

---

[1] We have not addressed whether Bobby's failure was also "intentional" under *Craddock*.

[2] Because they are unnecessary to the disposition of this appeal, we do not address Bobby's arguments related to the other prongs of the *Craddock* test. *See* TEX. R. APP. P. 47.1.

**SAM GRIFFITH**
Justice

Opinion delivered August 18, 2010.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)