

# THE SUPREME COURT OF TEXAS
Post Office Box 12248
Austin, Texas 78711

(512) 463-1312

FILED IN COURT OF APPEALS
12th Court of Appeals District

MAR – 6 2006

TYLER, TEXAS
CATHY S. LUSK, CLERK

February 24, 2006

Mr. Shawn Malcolm McCaskill
Godwin Gruber, LLP
1201 Elm Street, Suite 1700
Dallas, TX 75270

Mr. Douglas J. McCarver
3548 N.E. Stallings Drive
Nacogdoches, TX 75965

RE:  Case Number: 05-0295
      Court of Appeals Number: 12-04-00084-CV
      Trial Court Number: C19,776-2003

Style:  FIDELITY AND GUARANTY INSURANCE COMPANY
        v.
        DREWERY CONSTRUCTION COMPANY, INC.

Dear Counsel:

Pursuant to Texas Rule of Appellate Procedure 59.1, after granting the petition for review and without hearing oral argument, the Court delivered the enclosed per curiam opinion and judgment in the above-referenced cause.

Sincerely,

Andrew Weber

Andrew Weber, Clerk

by Claudia Jenks, Chief Deputy Clerk

Enclosures
cc:  Ms. Cathy S. Lusk
     Ms. Donna Phillips

12-04 00084-cv

# IN THE SUPREME COURT OF TEXAS

COURT OF APPEALS
12th Court of Appeals District

MAR – 6 2006

TYLER, TEXAS
CATHY S. LUSK, CLERK

No. 05-0295

FIDELITY AND GUARANTY INSURANCE COMPANY,
PETITIONER,

v.

DREWERY CONSTRUCTION COMPANY, INC.,
RESPONDENT

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE TWELFTH DISTRICT OF TEXAS

**PER CURIAM**

In this suit on a surety bond, Drewery Construction Company, Inc., a subcontractor, obtained a default judgment for $158,131.05 plus interest and attorney's fees against Fidelity and Guaranty Insurance Company, surety for the general contractor, JenCra, Inc. Fidelity filed a motion for new trial explaining that the service papers had been lost. The trial court denied the motion, and the court of appeals affirmed. ___ S.W.3d ___. Fidelity asserts three grounds for reversal, the last of which is well-taken. Accordingly, we reverse.

First, Fidelity complains of a minor omission in the citation. Rule 99 requires (among other things) that citation be directed to the defendant and show the names of parties. TEX. R. CIV. P. 99(b)(7)-(8). Citation here was correctly addressed to "Fidelity and Guaranty Ins. Co." but the style

of the case listed only "JenCra, Inc. & Fidelity and" due to space constraints, omitting the remainder of Fidelity's title.

The parties cite and rely on cases concerning restricted appeals (or before 1997, writs of error). But this appeal is from a motion for new trial. A brief review of the differences in these procedures shows why cases concerning one do not necessarily apply to the other.

A restricted appeal is filed directly in an appellate court. *See* TEX. R. APP. P. 30. As in any other appeal, the appellate court does not take testimony or receive evidence. Instead, the review is limited to errors apparent on the face of the record. *See Alexander v. Lynda's Boutique*, 134 S.W.3d 845, 848 (Tex. 2004). In such appeals, "[t]here are no presumptions in favor of valid issuance, service, and return of citation." *Primate Const., Inc. v. Silver*, 884 S.W.2d 151, 152 (Tex. 1994)(citations omitted). Circumstances require this last rule, because presumptions can neither be confirmed nor rebutted by evidence in an appellate court. Thus, for example, if the citation says an *amended* petition was attached (which named the defaulted party) and the return says the *original* petition was served (which did not), an appellate court cannot tell from the record which is true. *Id.* Similarly, if the petition says the registered agent for service is "Henry Bunting, Jr." but the citation and return reflect service on "Henry Bunting," an appellate court cannot tell whether those persons are different or the same. *See Uvalde Country Club v. Martin Linen Supply Co., Inc.*, 690 S.W.2d 884, 885 (Tex. 1985).

By contrast, when a default judgment is attacked by motion for new trial or bill of review in the trial court, the record is not so limited. In those proceedings, the parties may introduce affidavits, depositions, testimony, and exhibits to explain what happened. *See Gold v. Gold*, 145 S.W.3d 212,

2

214 (Tex. 2004) (per curiam). That being the case, these procedures focus on what has always been and always should be the critical question in any default judgment: "Why did the defendant not appear?"

If the answer to this critical question is "Because I didn't get the suit papers," the default generally must be set aside.[1] *See Peralta v. Heights Med. Ctr., Inc.*, 485 U.S. 80, 84 (1988) ("Failure to give notice violates the most rudimentary demands of due process of law."); *Caldwell v. Barnes*, 154 S.W.3d 93, 96-97 (Tex. 2004). Exceptions to this rule exist when nonreceipt is uncorroborated, *see Primate Constr.*, 884 S.W.2d at 152, or was a bill-of-review claimant's own fault, *see Campus Invs., Inc. v. Cullever*, 144 S.W.3d 464, 466 (Tex. 2004).

But if the answer to the critical question is "I got the suit papers but then ...," the default judgment should be set aside only if the defendant proves the three familiar *Craddock* elements. *See Craddock v. Sunshine Bus Lines*, 133 S.W.2d 124, 126 (Tex. 1939) (requiring new trial if defendant shows (1) default was neither intentional nor conscious indifference, (2) meritorious defense, and (3) new trial would cause neither delay nor undue prejudice).

In this case, undisputed evidence presented on the motion for new trial showed that Fidelity's registered agent received the suit papers. Thus, the only relevance of the partial omission of Fidelity's name is its possible role in the *Craddock* analysis. While errors in suit papers might mislead a defendant into failing to answer, Fidelity makes no such assertion here. Because Fidelity's failure to answer had nothing to do with this omission, it provides no ground for setting aside the

---

[1] Receiving suit papers or actual notice through a procedure not authorized for service is the treated the same as never receiving them. *See Wilson v. Dunn*, 800 S.W.2d 833, 836 (Tex. 1990).

default judgment by motion for new trial.

Second, Fidelity argues that the default should be set aside because it was served with Drewery's original petition, which was later amended before the default judgment. But the only difference in the two petitions was an amendment to allow long-arm service on JenCra by serving the Secretary of State. *See generally* TEX. CIV. PRAC. & REM. CODE, Chapter 17. Service of an amended petition on a party that has not appeared is necessary only when a plaintiff "seeks a more onerous judgment than prayed for in the original pleading." *Weaver v. Hartford Accident & Indem. Co.*, 570 S.W.2d 367, 370 (Tex. 1978). That was not the case here.

Fidelity's last argument finds better traction. Of the three *Craddock* elements needed to set aside a default, Drewery argues, and the court of appeals held, that Fidelity failed to establish only the first — whether the default was the result of accident or mistake.[2]

Fidelity attached four affidavits to its motion for new trial that establish the following facts. Fidelity's registered agent for service, Corporation Service Company (CSC), received Drewery's petition and citation. Though in the ordinary course of business CSC would forward an electronic scan of the documents to a Fidelity affiliate, computer records show this never occurred. As a backup, in the ordinary course of business CSC would forward the service documents themselves to the same affiliate, where they were compared with the electronic copy and then discarded after 90 days. As 90 days had passed before Fidelity learned of the default, all the records received during that time had been discarded. Thus, neither CSC nor Fidelity could verify whether Drewery's suit

---

[2] Fidelity asserted as a meritorious defense that Drewery did not file a timely claim on the surety bond and could not produce written change orders. Fidelity asserted and Drewery did not deny that a new trial would not cause delay or undue prejudice. *See Mathis v. Lockwood*, 166 S.W.3d 743, 744 (Tex. 2005) (per curiam).

papers were actually forwarded by CSC to Fidelity. CSC averred that an employee of Fidelity's affiliate "acknowledged receipt of the Petition," but the Fidelity agent who should have received them averred that she never did.

The court of appeals refused relief on the ground that Fidelity's affidavits did not explain what happened to the service documents:

> [T]here is no affidavit from a person who actually handled the citation explaining how the citation was lost or where in the chain of communication a breakdown occurred that led to Fidelity's failure to answer the citation. In this case, none of the affidavits Fidelity submitted explain what happened to the citation. Each affidavit stated that Fidelity's failure to answer was not intentional. However, a trial court cannot vacate a default judgment based only upon general allegations or conclusions.

___ S.W.3d at ___ (citations omitted).

We disagree that Fidelity's four affidavits were general or conclusory. To the contrary, they detail the procedures for handling service papers in general and what is known about Drewery's papers in particular. In the case of the electronic records, they explain precisely where the breakdown occurred — at data entry by CSC.

We also disagree that to establish that papers were lost there must be an affidavit from the person who lost them describing how it occurred. People often do not know where or how they lost something — that is precisely why it remains "lost." This Court has often set aside default judgments when papers were misplaced, though no one knew precisely how. *See Old Republic Ins. Co. v. Scott*, 873 S.W.2d 381, 382 (Tex. 1994) (reversing default when investigator averred that she believed suit papers were inadvertently included among files transferred to another adjustment company); *Estate of Pollack v. McMurrey*, 858 S.W.2d 388, 391 (Tex. 1993) (reversing default when

5

unidentified person signed for papers and never delivered them to executrix); *Hanks v. Rosser*, 378 S.W.2d 31, 32, 36 (Tex. 1964) (reversing default when druggist testified he placed suit papers "on his prescription counter," that he "just lost them" and "never did find them").

We agree that a conclusory statement that documents were "lost" must generally be supported by some explanation from the person most likely to have seen them, or of the efforts made to find them.[3] But the *Craddock* standard is one of intentional or conscious indifference — that the defendant knew it was sued but did not care. An excuse need not be a good one to suffice. *See Craddock*, 133 S.W.2d at 125.

The affidavits here show neither intent nor indifference. Instead, they detail Fidelity's efforts to establish a system that would avoid precisely what happened. As Drewery did not controvert this proof, the trial court was not at liberty to disregard it. *See Dir., State Employees Workers' Comp. Div. v. Evans*, 889 S.W.2d 266, 269 (Tex. 1994).

Accordingly, without hearing oral argument, we reverse the court of appeals' judgment and remand the case to the trial court for further proceedings consistent with this opinion. TEX. R. APP. P. 59.1.

OPINION DELIVERED: February 24, 2006

---

[3] *Compare Freeman v. Pevehouse*, 79 S.W.3d 637, 645 (Tex. App.-Waco 2002, no pet.) (affirming default in absence of affidavit from any employee at insurer's address to which citation was faxed); *BancTEXAS McKinney, N.A. v. Desalination Sys., Inc.*, 847 S.W.2d 301, 302-03 (Tex. App.-Dallas 1992, no writ) (affirming default in absence of affidavit from bank president upon whom citation was served); *Motiograph, Inc. v. Matthews*, 555 S.W.2d 196, 197 (Tex. Civ. App.-Dallas 1977, writ ref'd n.r.e.) (affirming default as affidavit stated only that citation was "inadvertently misplaced" by unnamed employee); *with Gen. Life and Accident Ins. Co. v. Higginbotham*, 817 S.W.2d 830, 832 (Tex. App.-Fort Worth 1991, writ denied) (reversing default as proof showed citation was mistakenly filed rather than forwarded to proper officials for answer, even though there was no explanation as to when or how misfiling occurred).

6

12-04-00084-CV

FILED IN COURT OF APPEALS
12th Court of Appeals District

MAR – 6 2006

TYLER, TEXAS
CATHY S. RUSK, CLERK

# IN THE SUPREME COURT OF TEXAS

No. 05-0295

FIDELITY AND GUARANTY INSURANCE COMPANY, PETITIONER

v.

DREWERY CONSTRUCTION COMPANY, INC., RESPONDENTS

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE TWELFTH DISTRICT OF TEXAS

## JUDGMENT

THE SUPREME COURT OF TEXAS, having heard this cause on petition for review from the Court of Appeals for the Twelfth District, and having considered the appellate record and counsels' briefs, but without hearing oral argument under Texas Rule of Appellate Procedure 59.1, concludes that the court of appeals' judgment should be reversed.

IT IS THEREFORE ORDERED, in accordance with the Court's opinion, that:

1) The court of appeals' judgment is reversed;

2) The cause is remanded to the trial court for further proceedings consistent with this Court's opinion; and

3) Fidelity and Guaranty Insurance Company shall recover, and Drewery Construction Company, Inc. shall pay, the costs incurred in this Court.

Copies of this judgment and the Court's opinion are certified to the Court of Appeals for the Twelfth District and to the District Court of Nacogdoches County, Texas, for observance.

Opinion of the Court delivered Per Curiam

February 24, 2006

\*\*\*\*\*\*\*\*\*\*