NO. 12-09-00458-CV

 

IN THE COURT OF APPEALS          

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

BOBBY DEAN COSTON,                           §                      APPEAL
FROM THE THIRD

APPELLANT            

 

V.                                                                    §                      JUDICIAL
DISTRICT COURT

            

NANCY JUNE COSTON,

APELLEE                                                     §                      HENDERSON
COUNTY, TEXAS  







            MEMORANDUM
OPINION

            Bobby
Dean Coston appeals the trial court’s default judgment of divorce rendered in
favor of Nancy June Coston.  In two issues, Bobby alleges that the trial court
abused its discretion by denying his motion for new trial.  We affirm.

 

Background

            Bobby
and Nancy were married on April 23, 2005.  Nancy filed her “Original Petition
for Divorce” on August 6, 2009.  Nancy served Bobby with the citation and her
petition on August 19, 2009.  The citation “commanded” Bobby to “appear by
filing an answer . . . at or before 10 o’clock a.m. of the Monday next after
the expiration of twenty days after the date of service hereof . . . .”  The
citation further read:

 

NOTICE TO RESPONDENT :  You have been sued.  You may employ an attorney.  If
you or your attorney does not file a written answer with the Clerk who issued
this citation by 10:00 a.m. on the Monday next following the expiration of
twenty days after you were served this citation and petition, a default
judgment may be taken against you.

 

 

Bobby failed to
file an answer by this time.

            On
October 12, 2009, the trial court held an evidentiary “default judgment
hearing.”  The trial court subsequently entered a default judgment of divorce,
styled “Final Decree of Divorce.”  Three days later, Bobby filed an answer. 
Bobby also filed a motion for new trial, alleging that the trial court should
set aside the default judgment.  After an evidentiary hearing, the trial court
denied the motion for new trial.  This appeal followed.

 

Motion for New Trial

            In
his first and second issues, Bobby alleges that the trial court abused its
discretion by denying his motion for new trial.

Standard
of Review

            We
review a trial court’s ruling on a motion for new trial for an abuse of
discretion. Strackbein v. Prewitt, 671 S.W.2d 37, 38 (Tex. 1984). 
A trial court abuses its discretion when its decision is arbitrary,
unreasonable, or without reference to any guiding rules or legal principles. K-Mart
Corp. v. Honeycutt, 24 S.W.3d 357, 360 (Tex. 2000).  “The mere fact
that a trial judge may decide a matter within his discretionary authority in a
different manner than an appellate judge in a similar circumstance does not
demonstrate that an abuse of discretion has occurred.” Downer v.
Aquamarine Operators, Inc., 701 S.W.2d 238, 242 (Tex. 1985).

            The
historical trend in default judgment cases is to liberally grant new trials. Miller
v. Miller, 903 S.W.2d 45, 47 (Tex. App.—Tyler 1995, no writ).  The law
prefers that cases be disposed on their merits wherever possible, rather than
by default. Gen. Electric Capital Auto Fin. Leasing Servs., Inc. v.
Stanfield, 71 S.W.3d 351, 356 (Tex. App.—Tyler 2001, pet. denied).  In Craddock
v. Sunshine Bus Lines, the Texas Supreme Court explained that

 

[a] default judgment should be set aside and a new
trial ordered in any case in which the failure of the defendant to answer
before judgment was not intentional, or the result of conscious indifference on
his part, but was due to a mistake or an accident; provided the motion for a
new trial sets up a meritorious defense and is filed at a time when the
granting thereof will occasion no delay or otherwise work an injury to the
plaintiff.

 

 

Craddock
v. Sunshine Bus Lines, Inc., 134 Tex. 388, 393, 133 S.W.2d 124, 126
(1939).  “When all three elements of the Craddock test are met,
the trial court abuses its discretion by not granting a new trial.” Bank
One, Tex., N.A. v. Moody, 830 S.W.2d 81, 85 (Tex. 1992).

            The Craddock
test is one of intentional or conscious indifference: that the defendant knew he
was sued but did not care. Fid. & Guar. Ins. v. Drewery Constr. Co.,
186 S.W.3d 571, 575-76 (Tex. 2006).  An excuse need not be a good one to
suffice. Id. at 576.  Our supreme court has often set aside
default judgments when papers were misplaced, though no one knew precisely how.
Id. at 575.  

            In
determining whether the failure to appear was due to intentional disregard or
conscious indifference, we must look to the knowledge and acts of the
defendant. Strackbein, 671 S.W.2d at 39.  Conscious indifference
can be defined as “the failure to take some action which would have been
indicated to a person of reasonable sensibilities under the same or similar
circumstances.” Alford v. Cary, No. 12-04-00314-CV, 2007 WL 60765,
at *3 (Tex. App.—Tyler Jan. 10, 2007, pet. denied) (mem. op.).  Conscious
indifference requires more than negligence; some excuse, but not necessarily a
good excuse, is enough to show a lack of intentional conduct or conscious
indifference. Massey v. Massey, No. 12-05-00216-CV, 2006 WL
1791682, at *3 (Tex. App.—Tyler June 30, 2006, no pet.) (mem. op.).  

            When,
as here, evidence is introduced at a hearing, the issues in the movant’s
affidavit become fact questions for the trial court to resolve. See Gilbert
v. Brownell Electro, 832 S.W.2d 143, 144-45 (Tex. App.—Tyler 1992, no
writ).  Therefore, the trial court was charged with the role of factfinder to
determine if Bobby’s conduct amounted to consciously indifferent or intentional
behavior. See id. at 144.  In this role, the trial court is “the
sole judge of the credibility of a witness and the weight to be given to the
testimony; it may choose to believe all, none, or part of [any] testimony.” Id.
at 144-45.  Where there are no findings of fact and conclusions of law
requested or filed, the trial court’s decision must be upheld on any legal
theory that finds support in the evidence. Strackbein, 671 S.W.2d
at 38.  

Discussion

            The
first prong of the Craddock test addresses the issue of why the
defaulting party failed to file an answer. Craddock, 134 Tex. at
393, 133 S.W.2d at 126.  Bobby’s motion for new trial included two affidavits,
respectively from Bobby and his father, Hollis Coston.  Bobby alleged in his
affidavit that he had “been suffering from serious injuries sustained in a
racing car accident that required hospitalization, two surgeries and extended
rehabilitation.”  He stated that, “[w]hen [he] received service of citation in
this case[,] [he] was physically and mentally unable to deal with the situation
until October 14, 2009.”  He also stated that he had “mistakenly believed that
[he] would receive further notice regarding a date to appear, but no notice of
a hearing came to [him].”  Finally, he asserted that his “failure to timely
file an answer was not intentional or conscious indifference on [his] part in
laying aside the citation at a time when [he] was experiencing extreme pain and
suffering.”  Hollis provided support for Bobby’s allegations in his affidavit. 
Hollis stated that Bobby “was seriously injured in a race car accident that led
to extensive back surgery and resulting rehabilitation that continues to this
date.”

            Nancy’s
response to Bobby’s motion included her own affidavit.  Nancy’s affidavit read,
in pertinent part, as follows:

 

Bobby Dean Coston’s failure to file an answer was due
to his intentional or conscious indifference and not the result of accident or
mistake.  Mr. Coston was not under physical or mental distress to the point
that would prevent him from filing an answer.  I had several conversations with
Mr. Coston about the divorce between the period of time that he was served and
the final trial date.  I tried on several occasions to discuss the divorce but
he would not cooperate.  During this time period Bobby Coston did not show any
signs that he was mentally or physically unable to file an answer.

 

 

            In
light of the conflicting affidavits, Bobby sought an evidentiary hearing before
the trial court.  Bobby testified as the sole witness in support of a new
trial.  Nancy did not testify and brought no additional evidence.  Nancy did
request that the trial court take judicial notice of the three affidavits and
the trial court granted, without objection, that request.  Bobby’s pertinent
testimony was as follows:

 

DIRECT EXAMINATION

 

                Q.            Can you explain to the
Court, Mr. Coston, what reason that you had for not filing a - - an answer or
what your expectations were with Nancy during this period of time?

 

                A.            I was under the
impression that there could well be a reconciliation.

 

                Q.            You wanted to reconcile
with her, did you not?

 

                A.            Yes, sir.

 

                . . . .

 

                Q.            In terms of your
expectation that y’all might be able to reconcile, Ms. Coston was calling you
and talking to you about your relationship after the divorce was filed; isn’t
that correct?

 

                A.            Yes, sir.

 

                Q.            [Did] you feel that you
might have a better chance to reconcile if you didn’t inflame this with . . .
court proceedings such as we’re having here?

 

                A.            Absolutely.

 

                Q.            So it was not an
indifference on your part why you were ignoring filing an answer.  It was
because you were hoping for a reconciliation?

 

                A.            Yes, sir.

 

                . . . .

 

                Q.            In the affidavit that
Nancy Coston has filed, Mr. Coston, she makes a comment that you were
uncooperative as far as talking to her about the divorce.  Is that true?

 

                A.            No, sir.

 

                Q.            In fact, you were
wanting her and talking to her about reconciliation, weren’t you?

 

                A.            Yes, sir.

 

                . . . .

 

                Q.            You didn’t file an
answer because you thought you were working toward a reconciliation with her
and didn’t want to inflame it; isn’t that right?

 

                A.            That’s correct.

 

                Q.            It was not conscious
indifference on your part that you were just not paying any attention to it?

 

                A.            Right.

 

CROSS-EXAMINATION

 

                Q.            Mr. Coston, have you
read the motion for new trial that your attorney filed on your behalf?

 

                A.            Yes.

 

                Q.            . . . . In Paragraph 2,
it says you mislaid the citation after it was delivered to you.  Is that a true
statement where your attorney said that in the motion?  Is that true?

 

                A.            Yes, sir.

 

                Q.            You did mislay the
citation?  Then in the next sentence it says you mistakenly believed that you
would receive further notice regarding the date to appear.

 

                A.            Yes, sir, I did.

 

                Q.            Is that true today?  You
mislaid it, and you thought you’d get another notice?

 

                A.            Actually, I thought I’d
get a court date, yes, sir.

 

                Q.            And then I want to refer
to your supporting affidavit.  And in Paragraph 4, you state, “When I received
service of citation in the case, I was physically and mentally unable to deal
with the situation until October 14.”  Is that true?

 

                A.            Well, I wasn’t aware
that the divorce was going to be in October, you know, October the 14th.  I
didn’t have any notification when the date was.  Matter of fact - -

 

                Q.            Yes or no, sir.  In
Paragraph 4, you said, “When I received service of citation in this case, I was
physically and mentally unable to deal with the situation until October 14,
2009.”  Is that a true statement that you swore to?

 

                A.            Yes.

 

                Q.            In the default, the
trial date was two days before; is that correct?

 

                A.            Yes, sir.  I believe
that’s right.

 

                Q.            And you received notice
of the citation . . . on August the 19th; is that correct?

 

                A.            Thereabouts.

 

                Q.            Well, so between August
19th and October 12th, the reason[s] that you stated in the motion for new
trial and in your affidavit are that you mislaid it; and you thought you’d get
notice.  That’s one reason.  And your additional reason was you were physically
and mentally unable to deal with it between the time of the citation and the
time of the trial.  Those are your two reasons you stated; is that correct?

 

                A.            And reconciliation.

 

                Q.            Okay.  And you’ve never
mentioned reconciliation until today; is that correct?

 

                A.            I discussed it with my
attorney.

 

                Q.            This is an additional
reason now that you failed to mention in your affidavit; is that correct?

 

                A.            Yes.

 

                . . . .

 

                Q.            [You filed an answer
three days after the default.]  Sir, right before - - what change - - you said
you were physically and mentally unable to deal with the situation.  On October
15th, you were able to deal with it then because you filed an answer on that
day.  But three days before, you weren’t able to come to court.  You weren’t
able to file an answer.  What changed?  What happened there?  What, what - -
how were you physically and mentally able to deal with it then but not a week
before?  What was that week [that] miraculously happened?

 

                A.            I guess listening to my
dad and coming to the conclusion that there wasn’t no reconciliation.  I was
more or less [becoming] used to [the idea of] get[ting] this final decree.

 

                Q.            So once again, sir, in
your affidavit, you say the reason you weren’t able to respond by the date is
because you were physically and mentally unable to file an answer?

 

                A.            No, sir.  I’m telling
you that I was trying to reconcile with her during that time.

 

                Q.            That’s not my question. 
You said you were physically and mentally unable to file an answer prior to the
answer date of October 15th.  That’s what you said in your affidavit.  The week
before, before the trial date, were you physically and mentally able to file an
answer?

 

                A.            Yes.

 

                Q.            You were?  So an
affidavit is simply not true when you swore you were not able to deal with it
on October 14th?

 

                A.            No, sir.  You’re
twisting that around.

 

                . . . .

 

                Q.            When did the surgery
occur, Mr. Coston?

 

                A.            Actually, I’m not sure
of the date.

 

                Q.            You’re not even sure of
the date?

 

                A.            No, sir.

 

                Q.            When were you out of
rehab?

 

                A.            I ain’t been to rehab.

 

                . . . .

 

                Q.            You [have] never been to
physical rehab?

 

                A.            No, sir.

 

                . . . .

 

                Q.            When this racing car
accident occurred.  When did that happen?

 

                A.            About two years ago.

 

                Q.            And when was the last
surgery?

 

                A.            I believe around the
first of August or July.

 

                Q.            So a few months ago?

 

                A.            Yes, sir.

 

                Q.            2009?

 

                A.            Correct.

 

                . . . .

 

                Q.            Are you under a
guardianship?  Anybody in charge of your estate?  Are you physically, mentally
unable to deal with the financial affairs?  Anything you’d like to tell me
regarding that?

 

                A.            No, sir.

 

                . . . .

 

                Q.            You’re not under a
guardianship, and no one is in charge of your estate?

 

                A.            No, sir.

 

                Q.            And you said you were
disabled.  Are you on disability?

 

                A.            No, sir.

 

 

            Physical
and Mental Condition

            The
evidence before the trial court included three possible excuses for Bobby’s
failure to file an answer.  First, Bobby alleged that he was “physically and
mentally unable to deal with the situation.”  As part of this allegation, he
alleged that his “failure to timely file an answer was not intentional or
conscious indifference on [his] part in laying aside the citation at a time
when [he] was experiencing extreme pain and suffering.”  However, Nancy
controverted Bobby’s allegations with her own affidavit alleging that Bobby
“was not under physical or mental duress to the point that would prevent him
from filing an answer.”  Bobby admitted as much during the above described
hearing testimony.  Likewise, Bobby’s testimony could be understood to indicate
that any physical and mental inability had much more to do with his desire to
reconcile than a debilitating condition.  His testimony could be understood to
show that the change in his condition was the result of discussing the
possibility of reconciliation with his father.  Therefore, it was permissible
to determine that Bobby had not suffered from a condition rendering him
incapable of filing a timely answer. See Gilbert, 832 S.W.2d at
144-45 (trial court may resolve contested issues of fact).  The same is true
for Bobby’s allegation that his failure to timely file an answer was not
intentional or conscious indifference on his part in laying aside the citation
at a time when he was experiencing extreme pain and suffering. See id.

            Mistaken
Belief as to Further Notice

            Second,
Bobby alleged that he had mistakenly believed he would receive further notice
regarding a date to appear.  In Butler v. Dal Tex, the Fort Worth
court of appeals dealt with a similar factual scenario. See Butler v. Dal
Tex Mach. & Tool Co., Inc., 627 S.W.2d 258, 260 (Tex. App.—Fort
Worth 1982, no writ).  There, the defendant alleged that he did not understand
the citation and that he believed he would be notified of a court date. Id.
 He claimed that he did not understand that the citation required for
him to file a written answer. Id.  He further testified that he
had a conversation with the constable who served him and that the constable
advised him to get an attorney. Id.  There was no evidence that
the defendant ever sought help to understand the citation. Id. 
The court of appeals presumed that the citation complied with the applicable law
governing its contents. Id.  The court held that there was “ample
evidence to support the implied finding by the trial court, whose duty it is to
weigh the evidence, that the failure to file an answer was the result of . . . a
conscious indifference on the part of [the defendant].” Id.

            In Johnson
v. Edmonds, the Fort Worth court again addressed a similar fact
situation. See Johnson v. Edmonds, 712 S.W.2d 651, 652-53 (Tex.
App.—Fort Worth 1986, no writ).  In that case, the defendant contended that he
failed to timely answer because he did not understand the nature of the
citation served upon him, and that his misunderstanding was a mistake rather
than conscious indifference. Id. at 652.  The defendant testified
that he believed the “papers” served upon him to be some indication that he was
going to be sued rather than notice that he had been sued. Id.  He
acknowledged that he had previously received a demand letter from the plaintiff’s
attorney, that the citation was personally served upon him by someone whom he
understood to be a constable, and that he read the “papers” served upon him. Id. 
 However, he denied reading that part of the citation requiring him to
timely answer the plaintiff’s petition. Id.  The court of appeals
noted that “Appellant is capable of reading English, has four years of college
education, and had engaged in the construction business for seven years.” Id. 
The court reasoned as follows: 

 

We interpret conscious indifference to mean a failure
to take some action which would seem indicated to a person of reasonable
sensibilities under the same circumstances.  In this case, the appellant
neither sought help nor advice nor made inquiry about the import of the
“papers” he had received.  We find that such acts are evidence of conscious indifference
sufficient to support the finding of the trial court.

 

 

Id. at
652-53.

            Here,
it is undisputed that Bobby was properly served with citation.  As in Butler
and Johnson, there was no evidence that Bobby sought help
in understanding the citation served upon him.  Further, it was reasonable for
the trial court to presume that the citation in question complied with rule 99
of the Texas Rules of Civil Procedure. See Butler, 627 S.W.2d at
260; see also Tex. R. Civ. P.
99.  Rule 99 reads, in pertinent part, as follows: 

 

c.  Notice. 
The citation shall include the following notice to the defendant: “You have
been sued.  You may employ an attorney.  If you or your attorney do not file a
written answer with the clerk who issued this citation by 10:00 a.m. on the
Monday next following the expiration of twenty days after you were served this
citation and petition, a default judgment may be taken against you.”

 

 

Tex. R. Civ. P. 99(c).  

            In
light of rule 99, as well as the undisputed fact that Bobby was served with
citation, the trial court could properly find that Bobby’s not filing an answer
was the failure to take some action that would have been indicated to a person
of reasonable sensibilities under the same circumstances. See Johnson,
712 S.W.2d at 653.  Further, Bobby’s hearing testimony was evidence that he had
one reason for failing to answer, his goal of reconciliation with Nancy.  In
light of that goal, the trial court could have discounted the allegation that
he failed to file an answer because he expected further notice. See Gilbert,
832 S.W.2d at 144-45 (trial court may resolve contested issues of fact).

            Hope
of Reconciliation

            Finally,
Bobby alleged at the hearing that he failed to file an answer because he had
hoped to reconcile with Nancy and believed that filing an answer would make
reconciliation more difficult.  However, in light of the mandatory warning
found in rule 99, the failure could be viewed as the result of conscious
indifference.[1] Cf. Vasquez v. Vasquez,
No. 04-97-00850-CV, 1998 WL 422296, at *2 (Tex. App.—San Antonio July 29, 1998,
no pet.) (not designated for publication) (reaching a similar
result).

Conclusion

            The
evidence before the trial court was sufficient for the trial court to determine
that Bobby had one goal, reconciliation.  The trial court could have properly
found that, to reach his goal, Bobby chose, as his strategy, to ignore the
warning in the citation.  He continued to do so even after the deadline to file
an answer had passed.  In light of rule 99, the trial court was free to
conclude that Bobby acted with conscious indifference. See Thomas
v. Bobby D. Assocs., No. 12-01-00361-CV, 2002 WL 1429821, at *2 (Tex.
App.—Tyler June 28, 2002, pet. denied) (not designated for publication)
(reaching such a conclusion under similar facts where trial court acted as
factfinder).  Therefore, we hold that the trial court did not abuse its
discretion by denying Bobby’s motion for new trial. See Craddock,
134 Tex. at 393, 133 S.W.2d at 126.  We overrule Bobby’s first
and second issues.[2]

 

Disposition

            We
affirm the judgment of the trial court.  In her brief, Nancy has
moved for appellate sanctions.  That motion is overruled.

 

 

                                                                                    Sam Griffith

                                                                                          
  Justice

 

 

 

Opinion delivered August 18,
2010.

Panel
consisted of Worthen, C.J., Griffith, J., and Hoyle, J.

 

 

 

(PUBLISH)









                [1]
We have not addressed whether Bobby’s failure was also “intentional” under Craddock.

 





                [2]
Because they are unnecessary to the disposition of this appeal, we do not
address Bobby’s arguments related to the other prongs of the Craddock
test. See Tex. R. App. P. 47.1.