

# Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-13-00334-CV

**FRESENIUS MEDICAL CARE-SOUTH TEXAS KIDNEY, LLC,** as successor in interest to
Bio-Medical Applications of San Antonio, Inc., and Bio-Medical Applications of San Antonio,
Inc.,
Appellants

v.

Raul **GONZALEZ**,
Appellee

From the 407th Judicial District Court, Bexar County, Texas
Trial Court No. 2012-CI-20478
Honorable David A. Canales, Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:       Catherine Stone, Chief Justice
               Karen Angelini, Justice
               Luz Elena D. Chapa, Justice

Delivered and Filed: April 9, 2014

REVERSED AND REMANDED

        This appeal arises from a dispute over a lease between Bio-Medical Applications of San

Antonio, Inc. and Fresenius Medical Care-South Texas Kidney, LLC[1] (collectively, "Fresenius,")

and Raul Gonzalez. After Gonzalez served Fresenius with the lawsuit and Fresenius failed to file

a timely answer, Gonzalez took a default judgment against Fresenius. Fresenius filed a motion for

---

[1]Successor in interest to Bio-Medical Applications of San Antonio, Inc.

new trial which was denied by the trial court. Fresenius appeals the denial of the motion for new trial. We reverse and remand.

## BACKGROUND FACTS

The facts in this case are derived from affidavits filed by Fresenius along with its motion for new trial. Two of the affidavits are pertinent to the issue in this appeal.

Amber Carrouth, a representative of CT Corporation, stated in her affidavit that CT Corp is the registered agent for service of process for Fresenius. Further, she testified, in pertinent part, that CT Corp was served with Plaintiff's Original Petition in this suit on January 7, 2013. According to Carrouth, standard business practices were to immediately scan the petition electronically and log it for distribution to Fresenius directly. But, on January 19, 2013, CT Corp discovered that service was not scanned and logged by CT Corp representatives correctly, resulting in Fresenius not being informed of the lawsuit up to that point. According to Carrouth, this mistake was corrected, and the Petition, along with proof of service, was scanned and logged in order to be made available electronically to Fresenius by the following business day, January 21, 2013. Further, Carrouth stated, "I then called representatives [ ] and left a message informing [Fresenius] of the Lawsuit and dates of service."

Justin J. Sergio, Assistant General Counsel for Fresenius, stated in his affidavit that CT Corp will typically electronically scan and upload any legal document served upon it as registered agent and that document is then available for viewing by Fresenius within one business day of filing. Then, once CT Corp uploads the legal document, Melissa Bachelder, a Fresenius employee and the designated coordinator for any legal service, obtains a copy and forwards it to his office for processing, which includes forwarding to outside litigation counsel for the filing of responsive pleadings. According to Sergio, the typical process for Fresenius upon receipt of service of process from CT Corp is to review the claim and identify whether it is a pre-existing claim. And, if it is a

new file, such as in this case, Fresenius conducts a preliminary in-house investigation and claim analysis before forwarding it to outside counsel, which typically takes a week to ten days. The file is then assigned to outside litigation counsel for filing a responsive pleading.

Sergio went on to explain how the underlying dispute developed and was investigated by the insurer without the involvement of his office. According to Sergio, on Wednesday, January 23, 2013, Melissa Bachelder emailed him and his legal assistant a copy of the lawsuit filed by Gonzalez. He then stated, "[w]hile we had been directly contacted by CT Corp to inform us that Plaintiff's Petition was available for viewing and had been served, we were not told how long it had been since original service and unfortunately, did not catch this delay when we initially reviewed the service papers." Sergio went on to explain in his affidavit that "Plaintiff's Petition was processed in the customary manner." He assessed the case and conducted a preliminary investigation and then assigned the case to outside counsel on February 1, 2013. This was past the answer deadline, which was January 28, 2013, and the date the default judgment was taken, which was January 30, 2013. Sergio described this as an "error in processing Plaintiff's Petition." Further, Sergio stated "[a]ny failure on the part of [his] office to get Plaintiff's Petition to outside counsel in order to timely file an answer and avoid the default judgment was purely accidental." And, according to Sergio, "because CT Corp mistakenly failed to send this lawsuit in its normally prompt fashion, and because [his] office failed to notice the significant delay between service and [its] receipt of Plaintiff's Petition, outside counsel was not assigned in time to get an answer timely filed."

Gonzalez did not file controverting affidavits. No testimony was presented at the motion for new trial hearing. Thus, Fresenius's affidavits were the only evidence considered by the trial court.

## STANDARD OF REVIEW

We review the denial of a motion for new trial for an abuse of discretion. *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 82-83 (Tex. 1992). A default judgment should be set aside if the defendant proves three elements: (1) the failure of the defendant to answer was not intentional or the result of conscious indifference, but was due to a mistake or accident; (2) the motion for new trial sets up a meritorious defense; and (3) a new trial would cause neither delay nor undue prejudice. *Craddock v. Sunshine Bus Lines, Inc.*, 133 S.W.2d 124, 126 (Tex. 1939). Thus, where the *Craddock* elements are satisfied, a trial court abuses its discretion in denying a motion for new trial. *Texas Sting, Ltd. v. R.B. Foods, Inc.*, 82 S.W.3d 644, 650 (Tex. App.—San Antonio 2006, pet. denied). Only the first of the three *Craddock* elements is at issue in this case.

## DISCUSSION

"It is a basic tenet of jurisprudence that the law abhors a default because equity is rarely served by a default." *Titan Indem. Co. v. Old South Ins. Group, Inc.*, 221 S.W.3d 703, 708 (Tex. App.—San Antonio 2006, no pet.). "The historical trend in default judgment cases is toward the liberal granting of new trials." *Texas Sting, Ltd.*, 82 S.W.3d at 650.

In considering the first prong of the *Craddock* test—whether the failure to answer was intentional or the result of conscious indifference, but was due a mistake or accident—we note that conscious indifference must amount to more than mere negligence. *Young v. Kirsch*, 814 S.W.2d 77, 81 (Tex. App.—San Antonio 1991, no pet.). Conscious indifference is the failure to take some action that would seem obvious to a reasonable person under similar circumstances. *Texas Sting, Ltd.*, 82 S.W.3d at 650. The test requires showing a defendant knew it was sued but did not care. *Fidelity & Guar. Ins. Co. v. Drewery Constr. Co.*, 186 S.W.3d 571, 575-76 (Tex. 2006). The defaulting party must provide some excuse, but not necessarily a good excuse, for failing to answer in a timely manner. *Id*. at 576.

We look to the knowledge and acts of the defaulting party to determine whether the failure to appear was due to intentional disregard or conscious indifference. *Walker v. Gutierrez*, 111 S.W.3d 56, 64 (Tex. 2003). If the facts set forth in the defaulting party's new trial affidavits are uncontroverted, the defaulting party satisfies its burden if it sets forth facts that, if true, negate intent or conscious indifference. *Texas Sting, Ltd.*, 82 S.W.3d at 650-51.

Fresenius argues that the trial judge abused its discretion in denying its motion for new trial because the uncontroverted evidence established its failure to answer was not the result of intentional or conscious indifference, but due to a mistake or accident.

Fresenius compares the facts of this case to those in *Fidelity*, 186 S.W.3d at 575-76. There, affidavits attached to the motion for new trial established that Fidelity's registered agent for service received the plaintiff's petition and citation. *Id*. at 575. Although ordinarily the agent would forward an electronic scan of the documents to Fidelity, computer records showed this never occurred. *Id*. And, as a backup, the agent would ordinarily forward the documents themselves to Fidelity, where they would be compared with the electronic copy and then discarded after 90 days. *Id*. Because 90 days had passed before Fidelity learned of the default, all records had been discarded and neither the agent nor Fidelity could verify whether the documents were actually forwarded by the agent to Fidelity. *Id*. The agent said a Fidelity employee had acknowledged receipt of the petition, but the Fidelity employee who should have received them stated she did not. *Id*. In *Fidelity*, the Texas Supreme Court found that the affidavits did not show conscious indifference, but instead detailed procedures for handling service papers in general and what was known about this particular petition. *Id*. at 575-76. The evidence explained precisely where the breakdown occurred—at data entry by the agent. *Id*. at 575. Thus, the supreme court concluded the trial court abused its discretion in denying the motion for new trial. *Id*. at 576.

Fresenius relies on numerous other cases wherein a default judgment was set aside because the appellant showed the failure to file an answer was not due to conscious indifference but rather was due to a mistake or accident. *See*, e.g. *Craddock*, 133 S.W.2d at 124-25 (suit papers mistakenly placed with less important mail); *Continental Airlines, Inc. v. Carter*, 499 S.W.2d 673, 674-75 (Tex. Civ. App.—El Paso 1973, no writ) (attorney erroneously concluded answer due on the wrong date and secretary inadvertently failed to note answer date on the calendar); *Evans v. Woodward*, 669 S.W.2d 154, 155 (Tex. App.—Dallas 1984, no writ) (failure to file answer was due to confusion in the attorney's office rather than indifference on the defendant's part).

Gonzalez, on the other hand, compares the facts of this case to cases wherein conscious indifference was found. He cites to *Sunrizon Homes, Inc. v. Fuller*, 747 S.W.2d 530, 533 (Tex. App.—San Antonio 1988, writ denied). In that case, the evidence showed that after service of the original petition, the plaintiff's attorney reminded the defendant by letter that an answer must be filed. *Id*. at 532. The defendant acknowledged receiving this letter, yet did not file an answer. *Id*. The defendant offered an excuse for not answering: that the general manager was "too busy." *Id*. at 533. The trial court found that the failure to file an answer amounted to conscious indifference, and we concluded that this finding was not an abuse of discretion. *Id*.

Gonzalez also cites to *Oak Creek Homes, Inc. v. Jones*, 758 S.W.2d 288 (Tex. App.—Waco 1988, no writ). In *Oak Creek*, the defendant was served on February 4, 1987, but did not know what insurance company was to handle the claim until February 27, 1987. *Id*. at 291-92. On that date, the defendant mailed the suit papers to the adjuster after speaking with him by telephone. *Id*. On March 2, 1987, the adjuster contacted an attorney and asked him to file an answer, which he did that afternoon. *Id*. at 292. In controverting affidavits, the plaintiff's attorney testified to ongoing negotiations with the insurance adjuster before suit was filed. *Id*. After negotiations were unsuccessful, the attorney told the adjuster suit would be filed "shortly." *Id*. A month after suit

was filed, the adjuster called the attorney asking him to refrain from taking a default judgment on the following Monday. *Id*. The attorney told the adjuster he could not make such an agreement and that he would take a default judgment if an answer was not timely filed. *Id*. A default judgment was, in fact, taken. *Id*. The trial court found that the failure to timely file an answer was intentional or the result of conscious indifference. *Id*. The appellate court upheld the trial court's ruling, concluding the evidence supported a finding that the adjuster made a conscious decision not to file an answer, or at least that he was indifferent about filing a timely answer. *Id*.

Gonzalez additionally relies on *Padilla v. Hollerman Dev., L.P.*, No. 04-08-00739-CV, 2009 WL 1153324, at *2-4 (Tex. App.—San Antonio 2009, no pet.). In that case, the defendant was served by substituted service when the process server attached suit documents to the front door of his home. *Id*., at *1. The defendant found the papers in the bushes outside his home and took them to his real estate attorney. *Id*. The attorney told him he had not been properly served and to wait until he was properly served to file an answer. *Id*. A default judgment was taken. *Id*. We upheld the denial of the motion for new trial because the defendant was in fact properly served and the defendant's mistaken reliance on his attorney's advice did not excuse his failure to respond in some way to the lawsuit. *Id*., at *4.

Another case relied on by Gonzalez is *Grammar v. Hobby*, 276 S.W.2d 311 (Tex. Civ. App.—San Antonio 1955, writ ref'd n.r.e.). In *Grammar*, the attorneys engaged in pre-suit negotiations. *Id*. at 311-12. Once suit was filed, the plaintiff's attorney furnished the defendant's attorney with a copy, and the defendant's attorney told the plaintiff he would file an answer so there was no need for service on the defendant. *Id*. at 312. When no answer was filed, the plaintiff served the defendant. *Id*. The defendant gave the suit papers to a friend and asked him to deliver them to the defendant's attorney. *Id*. After a delay, the friend told the attorney by telephone that he had had the citation for about a week. *Id*. The attorney told the friend to get the citation to him

at once, which he agreed but neglected to do. *Id*. A few days later, the attorney did get the citation, but the default judgment was taken that day. *Id*. We found there was evidence of conscious indifference on the part of the defendant, his friend, and probably the attorney. *Id*. at 313. We detailed the evidence, noting that the attorney could have filed a timely answer when he learned about issuance of service several days before the default judgment because he had been provided a copy of the petition when suit was first filed. *Id*. We then affirmed the trial court's denial of the motion for new trial. *Id*.

After reviewing the evidence in this case and numerous cases dealing with the *Craddock* test, we find that the trial court abused its discretion in refusing to set aside the default judgment against Fresenius. The facts in this case more closely resemble the facts in the cases wherein defendants were found to have failed to answer due to accident or mistake rather than due to intentional or conscious indifference.

Fresenius's uncontroverted evidence establishes that the petition was served on January 7, 2013 on CT Corp. The answer due date was January 28, 2013. Because of a scanning and logging error, which CT Corp did not realize had occurred until January 19, 2013, the petition was not sent to Fresenius until January 21, 2013. A CT Corp representative also called Fresenius and left a message informing it of the lawsuit and service date. There is no evidence showing who the message was left with, but Fresenius's assistant general counsel, Sergio, did acknowledge CT Corp had directly contacted Fresenius about the petition. The evidence further shows that CT Corp and Fresenius had customary and standard practices for handling lawsuits. And, the evidence shows that Sergio, who was responsible for assigning lawsuits to outside counsel, "did not catch [the] delay" created by CT Corp's error. Thus, according to Sergio, he processed the petition in the usual manner, which meant the case was not assigned to outside counsel until shortly after the answer deadline had passed and the default judgment had been taken. In short, it was a series of accidents

or mistakes that caused Fresenius to fail to timely file an answer to the lawsuit. First, CT Corp made a scanning and logging error. Second, Sergio, although acknowledging direct contact from CT Corp about the suit, failed to realize there had been a delay. And third, Sergio, mistakenly assuming the papers had been processed in the customary manner, conducted the usual preliminary investigation before assigning the case to outside counsel. We conclude this evidence shows the failure to answer was not intentional or the result of consciously indifferent conduct. *See Milestone Operating, Inc. v. ExxonMobil Corp.*, 388 S.W.3d 307, 310 (Tex. 2012) (finding first *Craddock* element was satisfied when the defendant did not recall being served, even though a witness said she observed service on defendant).

We, therefore, reverse the trial court's order denying Fresenius's motion for new trial and remand this case to the trial court for proceedings consistent with this opinion.

Karen Angelini, Justice