

In The
Court of Appeals
Seventh District of Texas at Amarillo

_____

No. 07-25-00145-CV
_____

H3 CATTLE LLC, HARTWELL FARMS LLC, HHH FARMS LLC, HH LAND LLC, HHH
EQUIPMENT LLC, WAYMON SCOTT HARTWELL A/K/A SCOTT HARTWELL A/K/A
WAYMON HARTWELL, AND AUSTIN SCOTT HARTWELL, APPELLANTS

V.

CRAIG NOACK, SOLELY IN HIS CAPACITY AS COURT-APPOINTED TURNOVER
RECEIVER, AND ALAMO COLLECTION OPCO, LLC, APPELLEES

On Appeal from the County Court at Law No. 2
Denton County, Texas
Trial Court No. CV-2023-04726, Honorable Robert Ramirez, Presiding

December 17, 2025

MEMORANDUM OPINION[1]

Before QUINN, C.J., and DOSS and YARBROUGH, JJ.

H3 Cattle LLC, Hartwell Farms LLC, HHH Farms LLC, HH Land LLC, HHH
Equipment LLC, Waymon Scott Hartwell a/k/a Scott Hartwell a/k/a Waymon Hartwell,
and Austin Scott Hartwell (Hartwell group) appeal from a no-answer default judgment

---

[1] Because this matter was transferred from the Second Court of Appeals, we apply its precedent when it conflicts with that of the Seventh Court of Appeals. TEX. R. APP. P. 41.3.

favoring Craig Noack, solely in his capacity as court-appointed turnover receiver, and Alamo Collection Opco, LLC (collectively referred to as N & A). We affirm.

### Background

N & A sued the Hartwell group to impound assets for payment of outstanding judgments against Waymon Hartwell. Those judgments were entered in tangential proceedings. Various of the allegations within the live amended petition encompassed fraudulent conveyance, alter ego, and piercing corporate veils. Citation issued. Service of citation was returned. Each of the latter indicated successful service upon each member of the Hartwell group. However, none filed a timely answer or otherwise appeared. That resulted in entry of the default judgment under attack here.

The Hartwell group timely moved for a new trial. N & A responded. Thereafter, the trial court denied the motion via written order, specifying that it considered the argument and evidence presented by the parties.

Eight issues pend for disposition. We address each in turn.

### Issue One

The Hartwell group's initial foray likens to a shotgun approach. With little substantive or legal analysis, they generally reference defects in the citation. Those defects consist of 1) the absence of Alamo's name from the document, 2) allusion to the original, as opposed to the amended, petition, 3) the name and address of Alamo's legal counsel being omitted, and 4) the absence of Alamo as a party plaintiff from the original petition. These "defects [supposedly] constitute a monumental failure of due process." An outlier of an argument unrelated to the purportedly defective citation involved

2

complaint about counsel for Alamo failing to sign the motion for new trial. We overrule the issue for the following reasons.

Regarding whether the alleged citation defects "constitute[d] a monumental failure of due process," the Hartwell group failed to cite legal authority supporting the contention about denied "due process." Nor did they accompany the allegation with substantive explanation. As such, the matter of "due process" was inadequately briefed and therefore waived. *See Knorpp v. Cit Group/Consumer Fin., Inc.*, No. 07-19-00177-CV, 2020 Tex. App. LEXIS 6090, at *13-14 (Tex. App.—Amarillo Aug. 3, 2020, no pet.) (mem. op.) (stating that a contention in a brief must be supported by legal authority and substantive analysis, otherwise it is waived).

Regarding the signature of counsel for Alamo missing from the motion for default judgment, that matter suffers from like briefing defect. The Hartwell group neither cites legal authority nor provides substantive analysis supporting the proposition that because the motion "does not contain the Alamo Lawyer Signature Block, . . . only Noack, not Almao [sic], requested the Default Judgment." Thus, it too was waived.

Nevertheless, in reviewing the motion in question, we encountered an opening sentence of the motion stating: "COMES NOW Plaintiffs, Craig Noack, solely in his capacity as Court-Appointed Turnover Receiver, ***and Alamo Collections OPCO, LLC***, (herein "Plaintiffs") and files this Motion for Default Judgment . . . ." (Emphasis added). The concluding paragraphs of the motion also include the statements: 1) "***Plaintiffs*** are entitled to a default judgment"; 2) "***Plaintiffs*** ask the Court to sign a default judgment . . ."; and 3) "***Plaintiffs*** further pray for any further relief at law or equity to which ***they*** may be justly entitled." (Emphasis added). N & A together comprised the

3

"Plaintiffs," plural. So, the words we highlighted certainly reveal that both Noack and Alamo "requested the Default Judgment."

Turning to the matter of defects in the citation, *Fidelity & Guaranty Insurance Co. v. Drewery Construction Co.*, 186 S.W.3d 571 (Tex. 2006) controls our analysis. Through it, the Supreme Court informed us of the appropriate inquiry when reviewing appellate attempts to nullify a no-answer default judgment. When the effort comes to us via a restricted appeal, review is limited to searching for error apparent on the face of the record. *Id.* at 573. In that situation, no presumptions in favor of valid issuance, service, and return of citation exist. *Id.* (quoting *Primate Const., Inc. v. Silver*, 884 S.W.2d 151 (Tex. 1994)). This is so because presumptions can neither be confirmed nor rebutted by evidence tendered to an appellate court. *Id.*

But, when the default judgment is attacked by a motion for new trial or bill of review in the trial court, the parties had the opportunity to proffer affidavits and other evidence. *Id.* at 574. So, under that scenario, focus lies on the critical question: "'Why did the defendant not appear?'" *Id.* If he did not because he failed to receive "'the suit paper'" then "the default generally must be set aside." *Id.* Yet, this too comes with exceptions, two of which are 1) "nonreceipt is uncorroborated" and 2) nonreceipt was the fault of the defendant. *Id.* On the other hand, if the defendant received "'the suit papers,'" then the default judgment may be vacated "only if the defendant proves the three" *Craddock* prongs. *Id.*[2] And, should the latter situation apply, then defects in

---

[2] *See Craddock v. Sunshine Bus Lines Inc.*, 133 S.W.2d 124, 126 (Tex. 1939) (stating that a default judgment should be set aside when 1) the failure of the defendant to answer was neither intentional nor the result of conscious indifference but rather due to a mistake or an accident, 2) the motion for a new trial sets up a meritorious defense, and 3) granting the motion neither occasions delay nor works an injury to the plaintiff).

citation become relevant only in relation to the role they played in the *Craddock* analysis. *Id.* (stating that because the evidence illustrated "the suit papers" were received, "the only relevance of the partial omission of Fidelity's name [in the citation] is its possible role in the *Craddock* analysis"). And, it is incumbent on the defendant to explain that role. *See id.* (observing that "[w]hile errors in suit papers might mislead a defendant into failing to answer, Fidelity makes no such assertion here. Because Fidelity's failure to answer had nothing to do with this omission, it provides no ground for setting aside the default judgment by motion for new trial").

As indicated earlier, the proceeding before us is not a restricted appeal but rather an appeal from a denied motion for new trial. So, our analysis depends on the answer to the question: "why did the defendant not appear?" Evidence proffered by the Hartwell group with their motion for new trial suggests (at least in part) that they pursued the non-receipt avenue. We garner this from the statements in the unsworn declaration of Waymon Scott Hartwell and the corporations' alleged registered agent.

The former represented that 1) "I have never been provided with a copy of the Petition and hence have never seen the Petition"; 2) "the Company Defendants failed to respond to those matters [the suit] because they received no notice of any service on MW," the purported registered agent for the corporate defendants; 3) "I did not talk to MW on or about September 24, 2024 or thereafter about any service of this lawsuit and received no documents from MW or about September 24, 2024 or thereafter relating to this lawsuit"; 4) "[t]he First Petition was emailed by Paola Murguia . . . who appears to be associated with Noack's law firm, to HHH Cattle LLC on December 22, 2023"; and 5)

5

"[t]he First Petition, other than pursuant to the PM Email, has never been provided to any of the Defendants to my knowledge."

In turn, the registered agent (MW) uttered, via his unsworn statement: 1) "I was not served with anything by [the process server] Byron A. Mitchell on September 24, 2024"; 2) Mitchell "stopped by my office . . . on September 24, 2024, but I was not there"; 3) Mitchell "advised the woman who was at the . . . Office when he stopped by that [he] was trying to serve me as registered agent for the Company Defendants"; 4) "[t]hat woman advised me of her conversation with . . ." Mitchell; and 5) "I do not have any documents received from [Mitchell] related to this lawsuit."

So, again, the unsworn declarations of Mitchell and Waymon suggest non-receipt of the suit papers. Yet, an obstacle arises to simply accepting those declarations as truthful and controlling. It arises from the words of the process server, Byron Mitchell. He attested to serving both the citation and second amended petition upon each limited liability company through the registered agent on September 24, 2024. He further attested to serving Waymon Scott Hartwell and Austin Hartwell on November 14, 2024, with the same documents as well as an order permitting substitute service by posting at their home addresses. This evidence is of import since recitations in a "return of service carry so much weight that they cannot be rebutted by the uncorroborated proof of the moving party." *Primate Constr.*, 884 S.W.2d at 152. Indeed, returns of service have long been considered prima facie evidence of the facts recited. *Hall v. Mansfield ISD*, No. 02-24-00201-CV, 2024 Tex. App. LEXIS 8829, at *6 (Tex. App.—Fort Worth Dec. 19, 2024, no pet.) (mem. op.) (so stating).

6

Given the attestations of the process server, there arose a question of fact regarding receipt of service. *See Laws v. Bailey*, No. 14-01-00108-CV, 2002 Tex. App. LEXIS 7425, at *10-11 (Tex. App.—Houston [14th Dist.] Oct. 17, 2025, no pet.) (mem. op.) (characterizing an allegation about lack of service as a question of fact). Furthermore, the trial court becomes the factfinder in such situations. *Morman v. Bishop Energy*, No. 02-23-00494-CV, 2024 Tex. App. LEXIS 6181, at *17 (Tex. App.—Fort Worth Aug. 22, 2024, no pet. ) (mem. op.). As such, it is free to believe all, none, or part of the evidence. *Id.* It cannot legitimately be said that a trial court abuses its discretion in denying a motion for new trial, based on conflicting evidence, if some substantive and probative evidence supports the ruling. *Id.*[3] Moreover, in denying the motion for new trial here, the trial court stated within its order that it had reviewed the evidence and argument of the parties. Of additional note is the rule requiring us to presume that every disputed fact issue before the court was found in support of the ruling. *Fields v. Texas Employers' Ins. Ass'n*, 565 S.W.2d 327, 329 (Tex. Civ. App.—Amarillo 1978, writ ref'd n.r.e.). The latter rule coupled with Mitchell's returns of service compel us to presume that the trial court not only resolved the fact question mentioned above but also did so in a manner favorable to N & A. That is, it impliedly found the Hartwell group members received service of citation and the live pleading. That, in turn, means the members of the group had to cast their attack upon the default judgment within the framework of *Craddock*.

---

[3] Of course, the standard of review when attacking a default judgment through a motion for new trial is abused discretion. *Morman*, 2024 Tex. App. LEXIS 6181, at *17. Discretion is abused if the court acts without reference to any guiding rules or principles; that is, it acts arbitrarily or unreasonably. *Id.*

A liberal reading of the appellants' brief reveals some effort to address the first *Craddock* element. Regarding the second element, though, they represented that "the Company Defendants have multiple valid defenses to the Plaintiffs' claims . . . ." But none were mentioned. They withheld disclosing same apparently because the nature of "Plaintiffs' claims . . . remain[ed] undisclosed and not plead in the Second Petition." Yet, their argument was not accompanied by authority holding that one need not identify alleged meritorious defenses because of uncertainty about the nature of a plaintiff's claims. Nor did they cite authority saying one is relieved from setting up such defenses in a motion for new trial because they may be numerous given how one interprets the live pleading. Rather, logic indicates that before one can represent, in good faith, that they have viable defenses to a suit, they would have to know about the claims against which they defend; so, it would seem to follow that if they truly have viable defenses they would have to understand the nature of N & A's claims. And, if they truly have such defenses, there is no reason to forego setting them up as required by *Craddock*.

Next, we read N & A's live pleading and found the causes of action and claims asserted therein are quite clear. N & A sought to collect upon outstanding judgments, payment of which Waymon purportedly avoided by utilizing the veil of entities he controlled. To thwart his efforts, N & A averred claims sounding in fraudulent conveyance and piercing corporate veils. We cannot see why defenses to those clearly revealed claims and causes of action cannot be identified per *Craddock* if such defenses actually exist.

The foregoing, thus, leads us to say that the "Company Defendants" failed to satisfy the second *Craddock* element. That means they failed to show, through issue

one, that the trial court abused its discretion in denying a new trial as it pertained to them.

Yet, what about the individual appellants, Waymon and Austin? Did they illustrate an instance of abused discretion through the first issue? We conclude they did not and reach that decision while focusing on the first *Craddock* element. Again, the individual appellants contend they did not receive the suit papers and that allegedly is why their failure to appear was neither intentional nor indifferent.[4] But, as discussed earlier, we must presume that the trial court impliedly found they did receive them. Thus, non-receipt alone is unavailable to satisfy the first *Craddock* element. So, they, like the corporate appellants, also failed to carry their appellate burden to establish error.

We make one other observation before moving on. No member of the Hartwell group contended that the purported defects in citation mentioned earlier induced their failure to answer. This omission too is consequential, in view of other language in *Fidelity* to which we earlier alluded. That language is: "While errors in suit papers might mislead a defendant into failing to answer, Fidelity makes no such assertion here. Because Fidelity's failure to answer had nothing to do with this omission, it provides no ground for setting aside the default judgment by motion for new trial." *Fidelity*, 186 S.W.3d at 574. We read the passages as requiring the defendant to illustrate the defects in citation, return, or the like induced the defendant's failure to timely appear or otherwise answer. So, the Hartwell group voicing no allegation about such a nexus, the

---

[4] Austin did not personally deny receipt of citation and the second amended petition. Rather, Waymon simply denied having knowledge of "anyone" receiving the documents.

9

alleged defects in citation and return complained of here similarly "provide[d] no ground for setting aside the default judgment by motion for new trial."

### Issues Two – Six

We next address issues two through six. Through them, the Hartwell group also complains of other instances of non-compliance with the rules of civil procedure pertaining to citation, its service of citation, and its return. Again, the trial court implicitly found receipt of service and the suit papers. Thus, like the rule deviations addressed and rejected as basis for reversal in issue one, those in the ensuing five issues similarly fail to warrant reversal for like reasons. That is, the Hartwell group offered no potential defenses required by the second *Craddock* prong. Nor did they attempt to illustrate a nexus between the defects complained about and their failure to appear. So, again, we cannot say they illustrated abused discretion in the trial court's decision to deny their motion for new trial.

### Issue Seven

The Hartwell group next argues the trial court erred in entering a judgment for unliquidated damages without holding an evidentiary hearing. We overrule the issue.

A no-answer default judgment operates as an admission of the material facts alleged in the plaintiff's petition, save for the existence and quantum of unliquidated damages. *Sunset Hills Homeowners Ass'n v. Carroll*, No. 02-14-00184-CV, 2015 Tex. App. LEXIS 5974, at *6 (Tex. App.—Fort Worth June 11, 2015, no pet.) (mem. op.). Regarding unliquidated damages, they must be proved through competent evidence or written instrument. *Id. See* TEX. R. CIV. P. 243 (stating that "[i]f the cause of action is unliquidated or be not proved by an instrument in writing, the court shall hear evidence

10

as to damages and shall render judgment therefor . . .).  Furthermore, damages are liquidated when uncontingent, ascertainable by usual means of evidence, and non-dependent upon the discretion of a factfinder.  *Foundation Support Spec. v. Galvan*, No. 07-23-00357-CV, 2024 Tex. App. LEXIS 5559, at *10 (Tex. App.—Amarillo Aug. 5, 2024, no pet.) (mem. op.).  Finally, **unliquidated** damages may be established via motion and affidavits without the need of a formal evidentiary hearing.  *See Irlbeck v. John Deere Co.*, 714 S.W.2d 54, 57 (Tex. App.—Amarillo 1986, writ ref'd n.r.e.).  That is, they can suffice to meet the evidentiary requirement of Rule 243.  *Id.*; *accord Aronovich v. Foresight Tech.*, No. 04-95-00652-CV, 1997 Tex. App. LEXIS 619, at *4 (Tex. App.—San Antonio Feb. 12, 1997, no pet.) (acknowledging same).

Assuming *arguendo* that the damages and fees sought and awarded at bar were unliquidated, N & A attached an affidavit to their motion for a default judgment purporting to establish them.  The two plaintiffs further requested the trial court to judicially note the court files from which emanated the earlier judgments underlying the claims in this proceeding.  Thus, our circumstances fall under the *Irlbeck* and *Aronovich* umbrella, thereby relieving the trial court of conducting a formal evidentiary hearing.  Of further import is the failure of the Hartwell group to explain why its evidentiary content deficiently supported entry of the awards granted by the trial court.  Consequently, we cannot say the Hartwell group carried its burden to prove the trial court erred when awarding the damages, fees, and interest at bar without the benefit of a formal evidentiary hearing.

11

*Issue Eight*

Through the last issue, the Hartwell group posits that the failure to serve Waymon or the designated registered agent of the corporate defendants caused the trial court to err in entering the default judgment against those entities. Yet, as explained via our disposition of issue one, the trial court impliedly found the entities were served through their registered agent. Additionally, that finding had evidentiary support, as we also explained earlier. Thus, we also overrule this issue.

Our having overruled each issue leads us to affirm the trial court's judgment.


Brian Quinn
Chief Justice

12