# Supreme Court of Texas

No. 24-0919

Jenna Tabakman,

*Petitioner*,

v.

Gary Tabakman,

*Respondent*

On Petition for Review from the
Court of Appeals for the Fourteenth District of Texas

**PER CURIAM**

In this default divorce case, the issue is whether the petitioner is entitled to a new trial under the *Craddock* test. *See Craddock v. Sunshine Bus Lines, Inc.*, 133 S.W.2d 124, 125-26 (Tex. [Comm'n Op.] 1939). The lower courts concluded that the petitioner failed to establish that her nonappearance was not intentional or the result of conscious indifference. We disagree. The record shows that the petitioner was unaware of having been served through alternative service and did not receive the citation posted on the door of her temporary abode. Then, when she learned about the oral rendition of judgment, she filed an answer before the judge signed the default divorce decree. This suffices to satisfy the first *Craddock* element. We also conclude that the

petitioner satisfied the remaining *Craddock* elements requiring a meritorious defense and proof that a new trial would not cause undue delay or injury to the respondent. We therefore reverse the court of appeals' judgment and remand the case to the trial court for a new trial.

**I**

After thirteen years of marriage and one child, Jenna Tabakman left the marital home to live with her parents because of purported mistreatment by her husband, Gary Tabakman. That same month, Gary sued for divorce and informed Jenna of the filing. Jenna later testified that she did not know what to do, was scared with no money for an attorney, and assumed the divorce papers would be served in person. According to her father, they then waited for service of process. But after months of multiple unsuccessful service attempts, the trial court authorized alternative service, and the process server posted the citation, petition, and alternative-service order on the front door of the parents' house. No answer was timely filed, so Gary moved for default judgment.

At a hearing on the motion, the judge orally rendered a default judgment. Unaware of these events, Jenna contacted an attorney around the same time because Gary allegedly told her he planned to abscond with their child and the family dog. Within three weeks, Jenna's attorney filed both an answer and a motion for a new trial under *Craddock*. Nevertheless, the trial court signed the default divorce decree a few days later.[1] After a subsequent evidentiary hearing, the

---

[1] As the court of appeals noted, "Jenna does not argue on appeal that the trial court abused its discretion by signing the Default Final Decree of Divorce after she appeared." ___ S.W.3d ___, 2024 WL 3419867, at *2 n.1 (Tex. App.—Houston [14th Dist.] July 16, 2024).

court denied Jenna's new-trial motion, finding that she set up a meritorious defense but was consciously indifferent to answering and failed to show that granting a new trial would not harm or injure Gary.[2]

The court of appeals affirmed. ___ S.W.3d ___, 2024 WL 3419867, at *1 (Tex. App.—Houston [14th Dist.] July 16, 2024). Addressing only the first element of the *Craddock* test, the court held that Jenna's excuse that she was unaware of having been served and did not take steps to avoid service was insufficient to negate conscious indifference in failing to answer. *Id.* at *6. Next, the court pointed to evidence that Gary had informed Jenna of the lawsuit and that someone was attempting to serve process. *Id.* The court concluded that since the factual assertions about Jenna's awareness of the lawsuit were controverted, the trial court was free to resolve the conflict against her. *Id.* at *7.

## II

Default judgments are "greatly disfavor[ed]" under Texas law, consistent with the strong policy preference for adjudicating cases on the merits. *In re Lakeside Resort JV, LLC*, 689 S.W.3d 916, 921, 925 (Tex. 2024). When both sides are present for litigation, the "adversarial clash" "increases the likelihood that accurate and truthful results will emerge" through the "collision of evidence and ideas." *Id.* at 920. But

---

[2] The trial court also found that Jenna had been properly served, and the court of appeals agreed. *Id.* at *2-6. In this Court, Jenna challenges that holding. Having reviewed the record and considered this issue, we conclude that she has not shown reversible error and further discussion would not add to the State's jurisprudence. *See Walker v. Baptist St. Anthony's Hosp.*, 703 S.W.3d 339, 345 (Tex. 2024) (recognizing that in exercising discretionary review and as "stewards of scarce judicial resources," we may "decline[] to provide reasons regarding our disposition of certain issues when we conclude that no error requires reversal and further discussion is not important to the jurisprudence of the State").

3

the complete absence of the losing party raises pressing concerns, including the troubling nature of ex parte communications even when permissible, the "inherent unfairness to the missing party," and the "threat to judicial integrity and independence that comes from the heightened risk of pronouncing and then enforcing erroneous judgments, backed by the coercive power of the State." *Id.* at 920-21. Indeed, our law merely tolerates such judgments because defendants "cannot defeat the authority of the courts simply by refusing to appear." *Id.* at 921. Accordingly, *any* doubts about a default judgment—not just doubts about service—"must be resolved against the party who secured the default." *Id.* at 922.

To that end, a defendant may rely on the equitable *Craddock* doctrine to set aside a default judgment and secure a new trial. *In re Marriage of Williams*, 646 S.W.3d 542, 545 (Tex. 2022). The *Craddock* test has three elements: "(1) the failure to answer was not intentional or the result of conscious indifference but was due to a mistake or accident, (2) the defendant sets up a meritorious defense, and (3) the motion is filed at such time that granting a new trial would not result in delay or otherwise injure the plaintiff." *In re R.R.*, 209 S.W.3d 112, 114-15 (Tex. 2006). When these elements are satisfied, a motion for new trial must be granted.[3] *See id.* at 114-15, 117. The overarching question guiding this inquiry is: "Why did the defendant not appear?" *Fid. & Guar. Ins. Co. v. Drewery Constr. Co.*, 186 S.W.3d 571, 574 (Tex. 2006).

---

[3] Even if a defendant does not satisfy the *Craddock* test, a trial court has broad discretion to determine that another ground identified in the defendant's motion constitutes "good cause" to order a new trial following a default judgment. *See* TEX. R. CIV. P. 320. This is so because such judgments are disfavored and "differ from every other kind in a fundamental way." *In re Lakeside Resort JV, LLC*, 689 S.W.3d 916, 920 (Tex. 2024).

4

As to the first *Craddock* element, the defendant satisfies her burden "when the factual assertions, if true, negate intentional or consciously indifferent conduct by the defendant and the factual assertions are not controverted by the plaintiff." *R.R.*, 209 S.W.3d at 115. A failure to answer is not intentional merely because it is deliberate, and conscious indifference is more than mere negligence. *Smith v. Babcock & Wilcox Constr. Co.*, 913 S.W.2d 467, 468 (Tex. 1995). Put another way, in this context, intent and conscious indifference mean "that the defendant knew it was sued but did not care." *Fid. & Guar. Ins.*, 186 S.W.3d at 576. The controlling fact is the "absence of an intentional failure to answer rather than a real excuse for not answering." *Milestone Operating, Inc. v. ExxonMobil Corp.*, 388 S.W.3d 307, 310 (Tex. 2012). Thus, "some excuse, although not necessarily a good one, will suffice to show that a defendant's failure to file an answer was not because the defendant did not care." *Sutherland v. Spencer*, 376 S.W.3d 752, 755 (Tex. 2012).

Jenna provided such an excuse. First, she testified that she thought the divorce papers would be served on her in person. Even though she was technically mistaken due to the availability of alternative-service methods, *see* TEX. R. CIV. P. 106(b), a mistake of law may satisfy the first element, *Bank One, Tex., N.A. v. Moody*, 830 S.W.2d 81, 81-82 (Tex. 1992). Second, she explained that she had not taken any actions to avoid service and was unaware of any actual service attempts through a process server personally contacting her, knocking on her parents' door, or leaving information at the house or with the

5

community's security guard.[4]   When she did become aware of the default, she expeditiously filed an answer before the judge signed the default divorce decree.   Finally, Jenna averred that she was never served, informed of, or brought the citation that was posted on the door.

Gary asserts that Jenna's excuse is "a conclusory denial of service."   In most alternative-service cases, there is only so much corroboration defendants can provide, as they may not know how or why they did not receive the citation.   As we have explained in the similar context of a lost citation, "[p]eople often do not know where or how they lost something—that is precisely why it remains 'lost.'"  *Fid. & Guar. Ins.*, 186 S.W.3d at 575.   Even so, such assertions "must generally be supported by some explanation from the person most likely to have seen them, or of the efforts made to find them."  *Id.*   Here, Jenna's father supported her excuse by describing the circumstances on the day alternative service was effected, the construction work being done on his house at that time, and how the community's security officer should have notified him of any visitors.   He also testified that the security officer never notified him of any visiting process servers, the construction crew did not give him any documents from the door, and he did not see anything posted on his door that day.

We hold that Jenna's excuse, if true, would negate intentionality or conscious indifference in not answering before the rendition of judgment.   Our holding is a natural extension of our case law.

---

[4] Jenna acknowledged that before alternative service was authorized, a process server approached her mother to inquire about where Jenna was residing.   Her mother checked if Jenna was home at that time and then informed the process server that she was not.   The process server did not see Jenna at that time, which was the only time the process server encountered or observed anyone at the residence.

Previously, we have concluded that not recalling being served or misplacing lawsuit papers are excuses that, if true and supported by some explanation, would negate intentional or consciously indifferent conduct. *Sutherland*, 376 S.W.3d at 755-56; *Milestone Operating*, 388 S.W.3d at 310; *Fid. & Guar. Ins.*, 186 S.W.3d at 575-76. In *Sutherland*, for example, we found sufficient the excuse that "the citation was left in a stack of papers on a desk and forgotten about because of limited time spent at the office due to weather conditions over a nearly three-week period during the Christmas holiday season." 376 S.W.3d at 755. The same logic applies with greater force to the excuse of not having received the citation when alternative service has been effectuated. *Cf. Fid. & Guar. Ins.*, 186 S.W.3d at 574 (noting that if the answer to the critical question of why the defendant did not appear is "'[b]ecause I didn't get the suit papers,' the default generally must be set aside").

In concluding otherwise, the court of appeals failed to distinguish between awareness of a pending lawsuit and awareness that one has been served with the citation. The plaintiff's filing of a petition commences a lawsuit. TEX. R. CIV. P. 22. But "a 'citation' is directed to the defendant, telling the defendant that he or she has been sued and commanding the defendant to appear and answer the opposing party's claims." *Tex. Nat. Res. Conservation Comm'n v. Sierra Club*, 70 S.W.3d 809, 813 (Tex. 2002). Importantly, the citation warns the defendant that, in the absence of a timely answer, "a default judgment may be taken against you." TEX. R. CIV. P. 99(c). And "[a]bsent service, waiver, or citation, mere knowledge of a pending suit does not place any duty on a defendant to act." *Wilson v. Dunn*, 800 S.W.2d 833, 837 (Tex. 1990); *see Fid. & Guar. Ins.*, 186 S.W.3d at 574 n.1 ("Receiving suit papers or actual notice through a procedure not authorized for service is treated

7

the same as never receiving them."). Although "[n]ot *understanding* a citation and then doing nothing following service" is an insufficient excuse, *R.R.*, 209 S.W.3d at 115 (emphasis added), not *receiving* the citation and being unaware of its service generally suffices to excuse a failure to answer before judgment, even if the defendant is aware of the lawsuit.

That said, Gary contends he controverted Jenna's factual assertions with evidence that the process server properly executed service. This misconstrues the role of alternative service, which allows a plaintiff to effectuate service when proof of actual notice is impractical. *See* Tex. R. Civ. P. 106(b); *State Farm Fire & Cas. Co. v. Costley*, 868 S.W.2d 298, 299 (Tex. 1993). Alternative service provides proof of how and when service was executed but is "no evidence in the record of when defendant *received* actual notice." *State Farm Fire & Cas.*, 868 S.W.2d at 299 (emphasis added); *cf. Red Bluff, LLC v. Tarpley*, 713 S.W.3d 412, 415 (Tex. 2025) (distinguishing actual knowledge from constructive knowledge for notice of a judgment under Rule 306a); *Cliff v. Huggins*, 724 S.W.2d 778, 780 (Tex. 1987) (noting that service under Rule 21a sets up a presumption that notice was received, but the presumption "is not 'evidence' and it vanishes when opposing evidence is introduced that the letter was not received"). The process server here testified that she never saw Jenna, and no other record evidence indicates that Jenna received the citation posted on the door or was put on notice of its service.[5] Accordingly, we hold that Gary did not controvert Jenna's factual assertions supporting her excuse.

---

[5] The court of appeals' opinion notes, "Gary stated that he informed Jenna about the . . . citation." ___ S.W.3d ___, 2024 WL 3419867, at *6. To the

Because Jenna's excuse satisfied the first *Craddock* element and the relevant factual assertions were not controverted, the court of appeals erred in holding that she did not establish this element.

## III

The court of appeals did not reach the other two *Craddock* elements, but we address them here in the interest of judicial and litigant economy. *See* TEX. R. APP. P. 53.4; *Walker v. Baptist St. Anthony's Hosp.*, 703 S.W.3d 339, 346 (Tex. 2024).

Under the second element, a defendant need only "set up" a meritorious defense without regard to controverting evidence. *Dolgencorp of Tex., Inc. v. Lerma*, 288 S.W.3d 922, 927-28 (Tex. 2009). In other words, the defendant must "allege[] facts which in law would constitute a defense to the plaintiff's cause of action and [are] supported by affidavits or other evidence providing prima facie proof that the defendant has such a defense." *Id.* at 928. As one defense among others, Jenna asserted a reimbursement claim from the community to her separate estate relating to the funds used as a down payment on the parties' marital home and supported this claim with testimonial and documentary evidence. Relying on controverting evidence, Gary argues that Jenna did not overcome the community-property presumption by establishing, with clear and convincing evidence, that the funds were separate property. *See* TEX. FAM. CODE § 3.003. Ultimately, Jenna may

---

extent this suggests Jenna was on notice of having been served with the citation, the record does not support it. Gary, a lawyer, merely mentioned at the hearing that after he filed suit, he spoke with Jenna multiple times about "hiring an attorney," "the divorce proceeding," "a process server," and "the citation of service." But he did not say whether these conversations occurred before or after alternative service was executed or what was said about the citation.

9

or may not succeed at trial on this claim. But at this stage, Gary imposes too high of a burden on Jenna. We agree with the trial court that Jenna "set up" a meritorious defense.

As to the third element, Jenna alleged in her motion that granting a new trial would not cause Gary any undue delay or injury. She also represented that she was ready for trial, agreed to pay Gary's reasonable costs incurred to secure the default judgment, and acknowledged the trial court's discretion to award attorney's fees related to the new-trial motion. This satisfied her initial burden, and the burden shifted to Gary to prove an injury. *See Dolgencorp*, 288 S.W.3d at 929. Gary alleged some financial harm from legal fees related to managing the community estate and in selling the marital home. He also testified that undoing the standard-possession order and child-custody provisions in the default divorce decree would "put a lot of strain" on their child. But he did not explain how these harms "would disadvantage [him] in presenting the merits of [his] case at a new trial." *Dir., State Emps. Workers' Comp. Div. v. Evans*, 889 S.W.2d 266, 270 (Tex. 1994) (rejecting assertions of general harm and financial hardship as an injury absent a showing of prejudice to the presentation of the merits in a new trial). Moreover, as Jenna has observed, *In re Marriage of Sandoval* supports her argument that no injury would result because allowing a defendant to establish a separate-property claim in a new trial "will not upset the underlying divorce, custody, support, or division of the community assets." 619 S.W.3d 716, 723 (Tex. 2021). We therefore hold that Jenna sufficiently established the third *Craddock* element.

10

\* \* \*

For these reasons, we conclude (1) the court of appeals erred in holding that Jenna did not establish the first *Craddock* element and (2) Jenna was entitled to a new trial under *Craddock*. Without hearing oral argument, we grant the petition for review, reverse the court of appeals' judgment, and remand the case to the trial court for further proceedings consistent with this opinion. *See* TEX. R. APP. P. 59.1.

**OPINION DELIVERED:** December 5, 2025

11